Lay *v.* International Brotherhood of Electrical Workers, Local No. 174, Appellant.

Argued April 28, 1967. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*James P. McKenna, Jr.,* with him *Murray R. Garber,* and *Lipsitz & Nassau,* for appellants.

*Thomas E. Waters, Jr.,* with him *David W. Swanson,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, November 14, 1967:

The instant appeal is from the granting of an injunction against the appellants, International Brotherhood of Electrical Workers, Local No. 174, AFL-CIO, and Austin G. Stafford, business manager of the union. Plaintiffs are D. H. Lay, Blain M. Mead, and Lewis L. Crippen, Commissioners of Warren County, Pennsylvania and, by virtue of their offices, Commissioners of the Rouse Estate. The Rouse Estate is a Pennsylvania nonprofit corporation organized for the purpose of providing care for the poor of Warren County. The decree enjoined the union from picketing or committing

other acts which interfere with the present construction program for additions and alterations to the Rouse Hospital at Youngsville, Pennsylvania.

The picketing arose out of the grant to R. D. Goss, Inc., of the electrical contract for the additions to the hospital. Goss, which had submitted the low bid, $73,-000, was the only nonunionized bidder. Negotiations between the union and Goss began, in which negotiations the union sought to get Goss to pay the union wage scale of $4.62. When he refused, the union peacefully picketed the construction at the Rouse Home. All work stopped when other union employees refused to cross the picket line.

Appellants contend, and we agree, that the court below had no jurisdiction to grant the injunction, since the question of the legality of the picketing is arguably within the jurisdiction of the National Labor Relations Board and on such issues, the federal government has preempted the field. In a thorough review of the cases on federal preemption in this area, *City L.O.H., Inc. v. Hotel, M. & C.E.U.,* 413 Pa. 420, 427, 197 A. 2d 614 (1964), we said: "In order to vest the National Labor Relations Board with exclusive jurisdiction and divest State Courts of Equity jurisdiction which they have possessed for a very long period of time, it is necessary, in this class of case, for the parties who claim that the N.L.R.B. has exclusive jurisdiction to prove, inter alia, (1) that the employer was engaged in interstate commerce . . . and (2) that the challenged activities were expressly or arguably within the jurisdiction of the N.L.R.B. [citing cases]

"Furthermore, the jurisdiction of the N.L.R.B. must be readily ascertainable from the averments of fact contained in the Complaint itself, or must be affirmatively proved by the party alleging such jurisdiction."

There is no dispute that the second factor mentioned above is met, i.e., that the activities were argu-

ably within the jurisdiction of the N.L.R.B. Section 8 (b) (7) of the National Labor Relations Act prohibits picketing of this kind.[1] The court below found that the instant picketing was indeed unlawful and was not merely an informational picket, excepted from the proscription of §8 (b) (7) (C).[2] The court found that the letter from defendant Stafford to the President of the Warren County Building and Construction Trades Council advising the President of the picketing, referring to it as informational, and describing the nature of such picketing, was merely a sham attempting to establish the innocent nature of the picketing.

The issues before us are thus narrowed to two. The first is whether the employer was engaged in interstate commerce so as to permit the N.L.R.B. jurisdiction. The second is whether, jurisdiction of the N.L.R.B. having been established, the federal preemption doctrine applies, or whether it admits an exception for the instant case. We hold that the interstate commerce involved is such that the case is arguably within N.L.R.B. jurisdiction, and that the federal preemption doctrine applies.

---

[1] "(b) It shall be an unfair labor practice for a labor organization or its agents . . . (7) to picket or cause to be picketed, . . . any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees . . . (C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time . . ."

[2] "Provided further, That nothing in this subparagraph . . . (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization . . ."

Since 1958, the jurisdictional standard of the N.L.R.B. for nonretail enterprises has been the $50,-000 outflow-inflow standard. See *Siemons Mailing Service,* 122 NLRB 81 (1958).[3] Defendants here have affirmatively proven, as they must, *City Line,* supra, that such amount is here met. Two recent Board cases establish that where the federal government provides partial financial support to a project, the Employer's services rendered to such project constitute indirect outflow. *Browne and Buford, Engineers and Surveyors,* 145 NLRB 765 (1963); *Truman Schlup, Consulting Engineers,* 145 NLRB 768 (1963). The reasoning stated in *Browne and Buford,* supra, at 766, is: "It is clear that a labor dispute disrupting services to these projects would have a serious and adverse impact on programs which are closely bound to the national interest. The Employer's aforementioned services rendered to Kansas political subdivisions are in our opinion infused with at least as great a Federal interest as services rendered to other, private concerns whose operations in other respects meet the Board's jurisdictional

---

[3] "For the Board has concluded that it will best effectuate the policies of the Act if jurisdiction is asserted over all nonretail enterprises which have an *outflow or inflow across State lines of at least $50,000, whether such outflow or inflow be regarded as direct or indirect.* For the purposes of applying this standard, *direct outflow* refers to goods shipped or services furnished by the employer outside the State. *Indirect outflow* refers to sales of goods or services to users, meeting any of the Board's jurisdictional standards except the indirect outflow or indirect inflow standard. [footnote omitted] *Direct inflow* refers to goods or services furnished directly to the employer from outside the State in which the employer is located. *Indirect inflow* refers to the purchase of goods or services which originated outside the employer's State but which he purchased from a seller within the State who received such goods or services from outside the State. In applying this standard, the Board will adhere to its past practice of adding direct and indirect outflow, or direct and indirect inflow. It will *not* add outflow and inflow." (Emphasis in original)

standards. Accordingly, we consider the Employer's services . . . to be indirect outflow." Those Board cases control here. The Goss firm was to render $73,000 worth of services on the Rouse Home project. Federal Hill-Burton funds accounted for a significant portion of the cost of the project. Thus, the $50,000 jurisdictional standard is met.

Appellees, claiming that it is on all fours and thus controlling, cite in their brief *North. Sch. Auth. v. Bldg. & C.T. Coun.*, 396 Pa. 565, 152 A. 2d 688 (1959), in which this court affirmed a decree enjoining picketing of school construction. That case is inapposite, however, since the appellants there had failed to establish that the jurisdictional standard had been met.

Once it is established that activity is expressly or arguably within the jurisdiction of the N.L.R.B. as a violation of Section 7 or 8 of the National Labor Relations Act the general rule is well established that the doctrine of federal preemption applies, i.e., the jurisdiction of the state court is ousted and the jurisdiction of the N.L.R.B. is exclusive. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). The reason behind the rule is stated in *Garmon*, at p. 244: "To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law."

Certain exceptions to the rule enunciated in *Garmon* have been developed. Some exceptions are Congressionally-developed, e.g., those under §§301 and 303 of the Labor Management Relations Act, 29 U.S.C. §§185, 187, permitting suits in state courts to redress breaches of collective bargaining agreements and violation of N.L.R.A. §8 (b) (4). A more recent statutory exception is §701 (a) of the Labor-Management Reporting and Disclosure Act, Act of 1959, 29 U.S.C. §164 (c), permitting state agencies and courts to assume juris-

diction over labor disputes over which the Board declines to assert jurisdiction.[4]

Further, judicially created exceptions have also evolved. The landmark *Garmon* case, while extending the federal preemption doctrine to the labor law area, nonetheless indicated at pp. 243-4 that the States retained power to regulate "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act . . . or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." Picketing of this kind can by no sort of rhetoric be termed a peripheral concern of the Labor Management Relations Act. When speaking of peripheral concerns in *Garmon*, the Supreme Court cited *International Assn. of Machinists v. Gonzales,* 356 U.S. 617 (1958). That was a case of a truly peripheral concern, for the N.L.R.B. could grant only *partial* relief. Here, the Board could grant all the relief sought.

The real issue here is whether the regulated conduct touches interests so deeply rooted in local feeling and responsibility that the states should retain jurisdiction. Probably the chief such area is where there is violence involved. "This general rule does not take from the States power to prevent mass picketing, violence, and overt threats of violence." *Weber v. Anheuser-Busch, Inc.,* 348 U.S. 468, 475 (1955); *United Automobile Workers of America v. Wisconsin Employment Relations Board,* 351 U.S. 266 (1956); *Youngdahl v. Rainfair, Inc.,* 355 U.S. 131 (1957); *City Line,* supra. This exception is clearly inapplicable here. No one contends that the picketing was anything but

---

[4] See *Stryjewski v. Local Union No. 830,* 426 Pa. 512, 233 A. 2d 264 (1967).

peaceful. The chancellor himself stated that "If the state can only act to preserve peace and to protect the person and property of its residents, then the preliminary injunction granted in this case should be vacated because the picketing sponsored by Defendant Union at the Rouse project was peaceful and involved no violence or threats of injury to persons or property."

We do not agree with appellants that *City Line,* supra, limits the exceptions to the federal preemption doctrine to the violence situation. The United States Supreme Court has recently applied the doctrine to a tort action for civil libel. *Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53 (1966). See also *Meyer v. Jt. Coun. 53 I.B. of Teamsters,* 416 Pa. 401, 206 A. 2d 382 (1965).

However, the exceptions are quite limited. Appellees rely on a case decided this past term by the Supreme Court, *Vaca v. Sipes,* 386 U.S. 171 (1967), as indicating that, with a multitude of decisions for state courts to follow, federal preemption is no longer a requisite, and should yield more often to state jurisdiction. We cannot agree that such was the import of that case. We read it as saying merely that in the special realm of violations of the duty of fair representation, developed judicially in *Steele v. Louisville & N.R.R.,* 323 U.S. 192 (1944), and following cases, rather than by the N.L.R.B., and often verging over to L.M.R.A., §301 issues cognizable, as we have seen, in state courts, the state court may retain jurisdiction. The instant case presents none of the special circumstances of *Vaca v. Sipes,* supra. Nor is it a case of nearly so compelling a local interest as violence: *Weber v. Anheuser-Busch, Inc.,* supra; *City Line,* supra; or civil libel: *Linn v. United Plant Guard Workers of America, Local 114,* supra; *Meyer v. Jt. Coun. 53, I.B. of Teamsters,* supra. Nor do the "practical" considerations presented by appellees impress us. Whatever the

alleged defects in the administrative process, they existed when the Supreme Court decided *Garmon,* supra. Neither that body nor the Congress has been remiss in creating exceptions to the *Garmon* doctrine when the circumstances dictate. The instant case falls within the general rule of federal preemption. Although completion of the additions to the hospital to relieve overcrowding would indeed be desirable, we are not convinced that this is such an overriding local interest that the doctrine of federal preemption should be overridden. Only in this way can the danger of state conflict with national labor policy be avoided.

Decree reversed, each party to bear own costs.

Mr. Justice ROBERTS concurs in the result.

Mr. Chief Justice BELL dissents.

Mr. Justice COHEN took no part in the consideration or decision of this case.