413 A.2d 662

**William SCHENA and Raymond Serafini, Appellants,**

v.

**Lester SMILEY, Jr. and International Union of Operating Engineers, Local No. 66, A, B, C, AFL–CIO, Appellees.**

Supreme Court of Pennsylvania.

Argued March 10, 1980.

Decided April 25, 1980.

---

William Caprio, III, Cogan Station, for appellants.

Stanford A. Segal, Gatz, Cohen, Segal & Koerner, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The issue on this appeal is whether a state court has subject matter jurisdiction over an action in trespass seeking pecuniary damages for the willful or negligent misconduct of appellee union and its agent for their failure to pursue appellants' claims with the National Labor Relations Board, or whether its jurisdiction is preempted by virtue of federal labor relations law.

Appellants' complaints allege negligence on the part of appellees in not including their names in an action before the NLRB,[1] and that by the time appellants realized they had not been included in the action, the statute of limita-

---

1. Appellants' complaint alleges the following. In 1969 appellees attempted to organize the employees of Treasure Lake, Inc. During the organizational campaign the appellants were discharged on May 23, 1969. Fourteen other employees were discharged on June 20, and on September 4, 1969 appellees filed with the NLRB an action claiming Treasure Lake committed unfair labor practices for discharging these fourteen. On September 30, October 10, and on numerous other occasions in 1969, 1970, 1971 and 1972, appellants requested that their names be added to the list of aggrieved former workers in the complaint against Treasure Lake, Inc.; and appellees promised that appellants' names would be included. However, appellants' names were never added to the list of aggrieved employees. Appellants allege they relied on the promises of the union and its agents. Appellants further allege that appellees' promises coupled with appellants' subsequent reliance thereon created a duty to act on the part of appellees. Appellants seek damages in the amount of $49,345.00 which represents the amount of backpay they would have received had they shared in the award handed down in the unfair labor practice action, and punitive damages.

tions for filing their own action against Treasure Lake, Inc. had run.[2]

In order to prevail against appellees, appellants would have to prove that, in discharging them, Treasure Lake had committed an unfair labor practice, and that, in an unfair labor practice action against Treasure Lake before the NLRB, the appellants would have been awarded damages. The trial court dismissed appellees' preliminary objections raising the question of jurisdiction, reasoning that since this was not an action to cure an unfair labor practice, the court did have jurisdiction over the issue in an action in trespass. The Superior Court reversed, and we affirm the ruling of the Superior Court.

In so doing, we note agreement with the Superior Court that in deciding whether the jurisdiction of the trial court is preempted, we must examine the action in the context of the federal scheme.

The common law recognized no right of employees to form labor organizations, to deal collectively through such organizations regarding terms and conditions of employment or to engage in concerted activities for other mutual aid or protection. In the early decades of the nineteenth century, concerted employee activities in support of demands for higher wages and better working conditions were met with criminal prosecution as common law conspiracies. In the latter part of the century and in the early years of the twentieth century, unionization was combatted by civil injunctions. Concerted activities in support of unionization—strikes, picketing and boycotts—were treated as conspiracies

**2.** Section 10(b) of the National Labor Relations Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." 29 U.S.C.A. § 160(b).

It should be noted that although the appellants were discharged on May 23, 1969, they waited until September 30, 1969 before requesting the appellee union, *of which they were not members,* to include them in the action before the NLRB, and further we note that nothing precluded the appellants from bringing *their own action* before the NLRB within six months after their discharge in accordance with § 10(b) of the National Labor Relations Act.

which restrained trade and inflicted irreparable damages on the affected employer. Courts tended to outlaw as tortious concerted employee activity which relied on methods such as striking and picketing which were thought to be inherently intimidating and foreboding of violence, or which set economic goals, such as an improved wage scale or closed shop, which were thought to be anti-social or unfairly restrictive of the freedom of others. Gorman, Labor Law 1–2, (1976).

Congress enacted the Labor Management Relations Act of 1947[3] to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other and to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce. Congress entrusted administration of the labor policy for the nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience.

Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. . . .

3. Act of June 23, 1947, c. 120 § 1, 61 Stat. 136, 29 U.S.C. § 141, et seq.

*Garner v. Teamsters C. & H. Local Union*, 346 U.S. 485, 490, 491, 74 S.Ct. 161, 165–66, 98 L.Ed. 228 (1953). *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 242–3, 79 S.Ct. 773, 778, 3 L.Ed.2d 775, 781 (1959), sets forth the rule which we are bound to follow in reviewing the question of federal preemption:

> When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

359 U.S. at 245, 79 S.Ct. at 780.

Here, without question, had an unfair labor practice action proceeded before the NLRB, it would have been under §§ 8(a)(1) or 8(a)(3) of the National Labor Relations Act.

The states, however, have not been deprived of all power where the activity in question is merely a peripheral concern of the Act, or where the action involves an interest so deeply rooted in the local community that the Court will not infer an intent on the part of Congress to preempt even though the tort action arose in the context of an unfair labor practice. *Sears Roebuck & Co. v. Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Farmer v. Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). From a review of these cases it seems clear that in deciding whether the jurisdiction of the lower court is preempted, we must inquire whether the state has a strong interest in redressing the alleged injury and, if it does, whether the state court can adjudicate the action *without deciding the merits of the underlying labor controversy.*

*Linn* involved an action for libel, which occurred in the midst of an organizational campaign. In upholding state court jurisdiction over the tort action the Supreme Court stressed the fact that the decision with respect to the merits of the libel action would not involve a decision of the merits of the unfair labor practice claim.

"While the Board might find that an employer or union violated § 8 by deliberately making false statements or that the issuance of malicious statements during an organizing campaign had such a profound effect on the election as to require that it be set aside, it looks only to the coercive or misleading nature of the statements rather than their defamatory quality. The injury that the statement might cause to an individual's reputation—whether he be an employee or union official—has no relevance to the Board's function. . . .

Furthermore damages for personal injuries may be assessed without regard to the merits of the labor controversy * * *."

Judicial condemnation of the alleged attack on Linn's character would reflect no judgment upon the objectives of the union. It would not interfere with the Board's jurisdiction over the merits of the labor controversy. 383 U.S. at 63–64, 86 S.Ct. at 663–64.

Similarly in *Farmer* the Court held that a state court was not preempted from exercising jurisdiction over a cause of action brought by a union member against the union for intentional infliction of emotional distress. The action could be adjudicated without regard to the merits of the underlying labor controversy.

The state court need not consider, much less resolve, whether a union discriminated or threatened to discriminate against an employee in terms of employment opportunities. To the contrary, the tort action can be resolved without reference to any accommodation of the special interests of unions and members in the hiring hall context. 430 U.S. at 303–05, 97 S.Ct. at 1066.

In *Sears,* the Court upheld the power of the state court to entertain an action by an employer to enforce state trespass laws against picketing which was arguably, but not definitely, prohibited or protected by federal law.

[I]n the state action, Sears only challenged the location of the picketing, whether the picketing had an objective proscribed by federal law was irrelevant to the state

claim. Accordingly, permitting the state court to adjudicate Sears' trespass claim would create no realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices.

The reasons why pre-emption of state jurisdiction is normally appropriate when union activity is arguably prohibited by federal law plainly do not apply to this situation; they therefore are insufficient to preclude a State from exercising jurisdiction limited to the trespassory aspects of that activity. 436 U.S. at 198, 98 S.Ct. at 1758.

■ Since appellants' damage claim is based upon their ability to prove and the lower court's ability to determine that when Treasure Lake, Inc. discharged appellants it committed an "unfair labor practice" that *would have been decided in appellants' favor* by the NLRB, it is apparent that under *Linn, Farmer* and *Sears* the lower court's jurisdiction has been preempted. To allow the lower court to decide the merits of the "unfair labor practice" attributed to Treasure Lake, Inc. would violate the preemption accorded by the federal scheme under the circumstances presented here. We, however, do not hold that *all* matters touching on labor relations are preempted from the jurisdiction of our state courts, but limit this to issues involving an "unfair labor practice", which was created by statute and unknown to common law.

Order of Superior Court affirmed.

ROBERTS, J., filed a Concurring Opinion in which NIX, J., joins.

ROBERTS, Justice, concurring.

I fully agree with the majority that under the principles of preemption embodied in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Court of Common Pleas of Clearfield County is without jurisdiction to entertain appellant's action of trespass against appellees. But I must write separately to point

out my disagreement with the majority's reasons for so concluding. In my view, the crucial issue is not, as the majority suggests, whether appellants' action requires a Pennsylvania tribunal to determine that appellants had a meritorious federal unfair labor practice charge against the employer. Rather, the issue of preemption here more properly turns upon whether appellants have stated a federal unfair labor practice against appellees.

In early 1969, appellees, a union and a union representative, attempted to organize appellants and other employees of Treasure Lake, Inc. Treasure Lake discharged appellants on May 23, 1969 and fourteen other employees one month later. In September, 1969, appellees filed an unfair labor practice charge with the National Labor Relations Board on behalf of Treasure Lake employees. The NLRB held in the employees' favor and ordered the Treasure Lake employees reinstated, with back pay.

Appellants were not included in the charge brought before the NLRB and did not otherwise seek to join. In April, 1977, after expiration of the applicable federal statute of limitations on unfair labor practice charges against the employer, see 29 U.S.C. § 106(b) (six months), appellants filed their action of trespass against appellees in the court of common pleas. Appellants allege that they asked appellees to add their names to the list of aggrieved parties and that appellees misrepresented appellants would be included in the action brought before the NLRB, but then "did nothing to press [appellants'] claims." Though ambiguous, appellants' allegations (and prayer for relief) suggest both intentional and negligent misrepresentations. Appellants sought damages equalling the back pay they claim would have been awarded had they been included in the NLRB action, along with punitive damages. Appellants neither joined nor pursued an independent action against their employer Treasure Lake.

Appellees filed preliminary objections to the court's subject matter jurisdiction. They claimed federal labor law preempts state court action. The court dismissed the pre-

liminary objections, but the Superior Court unanimously reversed and directed dismissal of appellants' complaint.

I agree that appellants' complaint must be dismissed, for in my view appellants have charged the union and its representative with a violation of Section 8(b)(1)(A) of the NLRA, 29 U.S.C. § 158(b)(1)(A). Section 8(b)(1)(A) makes it an unfair labor practice for a "labor organization or its agents" "to restrain or coerce . . . employees in the exercise of the rights guaranteed in section 7" of the NLRA. Section 7, 29 U.S.C. § 157, provides employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining . . . ." In *N.L.R.B. v. Marine and Shipbuilding Workers*, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968), the Supreme Court held a union violates Section 8(b)(1)(A) by sanctioning a union member who, without first exhausting internal union procedures, files an unfair labor practice charge with the NLRB against the union. The Court observed that:

> "[t]he policy of keeping people 'completely free from coercion,' [*Nash v. Florida Industrial Comm'n*, 389 U.S. 235, 238, 88 S.Ct. 362, 365, 19 L.Ed.2d 438,] against making complaints to the [NLRB] is . . . important in the functioning of the [NLRB] as [a] whole. . . . A healthy interplay of the forces governed and protected by the Act means that there should be as great a freedom to ask the Board for relief as there is to petition any other department of government for a redress of grievances. Any coercion used to discourage, retard, or defeat that access is beyond the legitimate interests of a labor organization."

391 U.S. at 424, 88 S.Ct. at 1721–22. Like the union sanctions imposed in *Marine and Shipbuilding Workers* against an employee who filed unfair labor practice charges against the union, appellees' misrepresentations which interfered with appellants' charges against the employer Treasure Lake may very well amount to an unfair labor practice.

But for appellees' misrepresentations, appellants would have presented unfair labor practice charges against the employer Treasure Lake. The language of *Marine and Shipbuilding Workers* would appear broad enough to include "misrepresentations" within the "coercion" condemned under Section 8(b)(1)(A). Cf. *N.L.R.B. v. Corbea, Perez, and Morell, S. en C.*, 300 F.2d 886, 888 (1st Cir. 1962) ("a [union's] fraudulent [mis]representation inducing membership is an unfair labor practice").

It must therefore be concluded that the Court of Common Pleas of Clearfield County lacks jurisdiction. As the Supreme Court stated in *Garmon*, "when it is clear or may fairly be assumed that the activities which a State purports to regulate . . . constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." 359 U.S. at 244, 79 S.Ct. at 779.

The Superior Court thus correctly directed dismissal of appellants' complaint.

NIX, J., joins in this concurring opinion.