579 A.2d 863

Cecelia DRISCOLL and William Dailey, Appellees,

v.

CARPENTERS DISTRICT COUNCIL OF WESTERN PENNSYLVANIA and United Brotherhood of Carpenters, Appellants.

Supreme Court of Pennsylvania.

Argued Sept. 25, 1989.

Decided Aug. 24, 1990.

Richard D. Gilardi, Ronald L. Gilardi, Marianne Oliver, Gilardi and Cooper, Pittsburgh, for appellants.

Daniel Ernsberger, Pittsburgh, for Cecelia Driscoll and William Bailey.

Elisabeth Schuster, Pennsylvania Human Relations Com'ns, Harrisburg, Cynthia A. Misicka, E.E.O.C., Washington, D.C., for amici curiae.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The instant appeal presents a question of first impression in this Commonwealth: whether the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"), is preempted by the National Labor Relations Act, 29 U.S.C. § 141, et seq. ("NLRA"), [1] from providing a remedy for alleged discriminatory practices in the operation of a labor union hiring hall. The following facts are pertinent to our resolution of this matter.

1. Act of July 5, 1935, C. 372, § 1, 49 Stat. 449, as amended by the Labor Management Relations Act of June 23, 1947, C. 120, § 1, 61 Stat. 136.

Appellees, Cecelia Driscoll and William Dailey, were members of the appellant labor organizations. Appellees alleged that by the terms of the labor agreement with the unions, all members of the union were to be referred to employment opportunities as the opportunities became known to appellants, a practice commonly termed a "hiring hall." Appellees alleged that, contrary to this agreement, the Union discriminated against Ms. Driscoll because of her sex by assigning her little or no employment since she became a journeyman carpenter in June 1983. Appellees further alleged that when Mr. Dailey protested the treatment of Ms. Driscoll, his daughter, appellants retaliated by refusing to refer him for employment opportunities. Appellees instituted these claims in common pleas court as violations of the PHRA, 43 P.S. § 955(c) and (d).[2] Upon appellants' preliminary objections, the trial court dismissed the cause of action under the PHRA, ruling that a remedy under the state act was preempted by the remedies provided in the NLRA.[3]

2. § 955. **Unlawful discriminatory practices**

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania;

. . . . .

(c) For any labor organization because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability of any individual to deny full and equal membership rights to any individual or otherwise to discriminate against such individuals with respect to hire, tenure, terms, conditions or privileges against such individuals with respect to hire, tenure, terms, conditions or privileges of employment or any other matter, directly or indirectly, related to employment.

(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

3. Once a violation of the PHRA has been established, several remedies are available:

On appeal, the Superior Court reversed the trial court. 370 Pa.Super. 295, 536 A.2d 412. After conducting a thorough examination of the interests protected by both the PHRA and the NLRA, the Superior Court concluded that the claims under the PHRA were not preempted by the NLRA. The court used a two-prong analysis and considered, first, whether a finding against preemption would frustrate congressional objectives; and second, whether the matter touched "deeply rooted local concerns" and was only of peripheral concern to the federal law. The court found that a finding against preemption would not frustrate Congressional intent because Congress had not explicitly removed jurisdiction from the states in this area of law, and because federal statutes evince a general intent to accord parallel or overlapping remedies for discrimination. It further determined that sex discrimination was merely a peripheral concern of the NLRA, which focuses on unfair labor practices generally, while such discrimination is a central focus of, and therefore "deeply rooted" in, the local concerns codified in the PHRA. The Carpenters' Union now appeals.

The landmark case involving preemption in the labor field is *San Diego Building Trades Council v. Garmon, ("Garmon")*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In *Garmon* the U.S. Supreme Court noted:

We have necessarily been concerned with the potential conflict of two law-enforcing authorities, with the dishar-

§ 959(f). If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the Commission shall state its findings of fact, and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action, including, but not limited to, reimbursement of certifiable travel expenses in matters involving the complaint, not to exceed fifty dollars ($50), compensation for loss of work in matters involving the complaint, not to exceed two hundred dollars ($200), hiring, reinstatement or upgrading of employes, with or without back pay, admission or restoration to membership in any respondent labor organization ... as, in the judgment of the Commission, will effectuate the purposes of this act....

monies inherent in two systems, one federal the other state, of inconsistent standards of substantive law and differing remedial schemes. But the unifying consideration of our decisions has been regard to the fact that Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience:

> Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies.... A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.... *Garner v. Teamsters Union,* 346 U.S. 485, 490–491 [74 S.Ct. 161, 165–64, 98 L.Ed. 228].

*Id.* at 242–43, 79 S.Ct. at 778.

Using this reasoning, the *Garmon* court then established the general rule that a state court must defer to the exclusive competence of the National Labor Relations Board ("NLRB") when the activity involved is arguably subject to Section 7 or 8 of the National Labor Relations Act. The agency created by the NLRA, the NLRB, is a centralized administrative agency which uses its specialized knowledge and cumulative experience to uniformly apply the substantive rules regarding federal labor policy. *Id.*

The principles set forth in *Garmon* have been adopted by this Court and reiterated in several cases. The issue of preemption, post–*Garmon*, was first addressed in *Smith v. Pittsburgh Gage and Supply Company*, 412 Pa. 171, 194 A.2d 181 (1963), wherein a conspiracy by an employer and a labor union to effectuate the discharge of employees unless they withdrew from the union was found to be an unfair labor practice, and therefore within the exclusive jurisdiction of the NLRB. *Id.*, 412 Pa. at 179, 194 A.2d 181. Subsequent cases considered similar, labor policy-related issues. *See Kerr v. Butler Building Trades Council*, 447 Pa. 247, 288 A.2d 525 (1972); *Stryjewski v. Local Union No. 830*, 426 Pa. 512, 233 A.2d 264 (1967); *Lay v. International Brotherhood of Electrical Workers*, 427 Pa. 387, 235 A.2d 402 (1967). In each of these cases the Court focused on the fact that the activity alleged was arguably subject to Section 7 or 8 of the NLRA.

Appellants, relying on *Garmon, Kerr,* and *Stryjewski,* argue that appellees' claims are preempted by the NLRA because they are arguably subject to Section 7 or 8 of the NLRA. Appellants assert that *Kerr* and *Stryjewski* established the methodology for determining when and how federal labor law issues are to be decided: first, the preemption doctrine is applicable where, as here, the action has been the subject of federal regulation; and second, once preemption is apparent, the party opposing dismissal has the burden of showing that the NLRB would assume jurisdiction. Appellants also contend that, even assuming that the Superior Court used the correct standard, the court improperly reached the conclusion that the discrimination alleged to have occurred was not of central concern to the NLRA. Appellants argue that the claims of discrimination constitute one type of unfair labor practice that the NLRA was enacted to discourage.

While appellees concede that the discrimination complained of may be covered by the National Labor Relations Act, they argue that the conduct is also proscribed by the

Civil Rights Act of 1964 ("Title VII"),[4] and they emphasize that Congress intended that the burden of protecting and enforcing civil rights be shared equally by the states and the federal government. Appellees also maintain that, absent a clear congressional mandate of preemption, state and federal jurisdiction is concurrent.

We re-examined the question of preemption in *Schena v. Smiley*, 488 Pa. 632, 413 A.2d 662 (1980). In *Schena* the Court distilled the reasoning of the several Supreme Court cases dealing with preemption and created a two-prong test: first, the court must inquire whether the state has a strong interest in redressing the alleged injury, and second, the court must determine whether it can adjudicate the action without deciding the merits of the underlying labor controversy. In the *Schena* case the claim of a discharged employee against a union, seeking damages for the union's failure to pursue the employee's claim before the NLRB, was found to be within the exclusive jurisdiction of the NLRB. The Court concluded that, although the state had strong interest in redressing the injury, it could not adjudicate the claim without deciding the merits of the underlying labor controversy. The Court further held that state court jurisdiction was preempted wherever the action concerned issues involving an "unfair labor practice" which was created by statute and unknown to common law.

As previously stated, appellees concede that their claims may constitute unfair labor practices under Section 8(b) of the NLRA. What is disputed, however, is whether the fact that the alleged conduct may violate the NLRA requires that jurisdiction be committed exclusively to the NLRB. For the following reasons, we conclude that the NLRB is not the exclusive forum for claims of employment discrimination by a labor union.

Federal law provides two distinct statutory remedies for claims of employment discrimination. One of these, the NLRA, was not designed specifically for the purpose of

4. 42 U.S.C. § 2000e, *et seq.*, Act of July 2, 1964, Pub.L. 88–352, Title VII, § 701, *et seq.*, 78 Stat. 253.

handling discriminatory practices, but sought to protect the workers' right to organize and bargain collectively. *NLRB v. Ford Radio and Mica Corp.*, 258 F.2d 457 (2d Cir.1958). The enactment of the labor relations statutes was a legislative response to a growing state of turmoil between labor and management in industries which significantly affected interstate commerce. *See* 173 A.L.R. 1401 § 1. The United States Supreme Court has noted that the NLRA

> evidences the intention of Congress to exercise whatever power is constitutionally given to it to regulate commerce by the adoption of measures for prevention or control of certain specified acts—unfair labor practices—which provoke or tend to provoke strikes or labor disturbances affecting interstate commerce.

*NLRB v. Fainblatt*, 306 U.S. 601, 607, 59 S.Ct. 668, 672, 83 L.Ed. 1014 (1939).

Accordingly, "the fundamental aim of the NLRA is the establishment and maintenance of industrial peace and to preserve the flow of interstate commerce." *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 674, 101 S.Ct. 2573, 2578, 69 L.Ed.2d 318 (1981). *See also, Brooks v. NLRB*, 348 U.S. 96, 103, 75 S.Ct. 176, 181, 99 L.Ed. 125 (1954); *Polish National Alliance v. NLRB*, 322 U.S. 643, 647, 64 S.Ct. 1196, 1198, 88 L.Ed. 1509 (1944); 29 U.S.C. § 141(b). The act defines certain types of conduct as "unfair labor practices," and, although not specifically enumerated under the section, discrimination by a union or employer on the basis of racial or sexual classification has been found to constitute an unfair labor practice. *See NLRB v. Local No. 106*, 520 F.2d 693 (6th Cir.1975); *Local Union No. 12 v. NLRB*, 368 F.2d 12, *cert. denied*, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1966).

Title VII was enacted to prevent continued systemic racial and sexual discrimination that had become pervasive in the workplace. The explicit purpose of Title VII was to rectify racial and sexual disparities in both the public and private sectors of employment. It has been said that the legislative purpose of Title VII was "to make employment

decisions sex-blind, as well as colorblind." *Gilbert v. General Electric Company*, 519 F.2d 661, 663 (4th Cir.1975). The United States Supreme Court has said that "what is required by Congress [in enacting Title VII] is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). *See also, Connecticut v. Teal*, 457 U.S. 440, 448, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982); *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 417, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973). The "specialized knowledge and cumulative experience" of the Equal Employment Opportunities Commission, therefore, is peculiar to problems arising from and related to employment discrimination. It is consistent with the legislative intent of Title VII to permit claims of employment discrimination, in whatever context they may arise, to be pursued via the procedures established by the Civil Rights Act. In fact, the Act specifically prohibits labor organizations from engaging in discriminatory employment practices, 42 U.S.C. § 2000e–2(c).[5]

The existence of dual federal remedies for employment discrimination is a clear indication that the NLRB's jurisdiction is not exclusive merely because such complaints are lodged against a labor union. As the Supreme Court has noted, Congress intended that there be multiple forums in which to seek remedies for discrimination. *See Alexander v. Gardner–Denver*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39

---

5. § 2000e–2. **Unlawful employment practices**

(c) It shall be an unlawful employment practice for a labor organization—

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or *refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities,* or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin. (Emphasis added.)

L.Ed.2d 147 (1974). In enacting Title VII Congress acknowledged the existence of other statutes, such as the Railway Labor Act and the NLRA, which might provide remedies for employment discrimination, and noted that the rights under these statutes were not abridged by the enactment of Title VII.

> For example, Senator Joseph Clark, one of the sponsors of the bill, introduced an interpretive memorandum which stated:
>> "Nothing in title VII or anywhere else in this bill affects rights and obligations under the NLRA and the Railway Labor Act.... [T]itle VII is not intended to and does not deny to any individual, rights and remedies which he may pursue under other Federal and State statutes. If a given action should violate both title VII and the National Labor Relations Act, the National Labor Relations Board would not be deprived of jurisdiction."
>
> 110 Cong.Rec. 7207 (1964). Moreover, the Senate defeated an amendment which would have made Title VII the exclusive federal remedy for most unlawful employment practices. 110 Cong.Rec. 13650–13652 (1964).

*Id.* at 48 n. 9, 94 S.Ct. at 1019–20 n. 9.

Indeed, the federal courts have recognized that where a plaintiff's claims of discrimination constitute an unfair labor practice, the claimant has the option of proceeding under *either* Title VII *or* the NLRA. *See United Packinghouse Workers Union v. NLRB*, 416 F.2d 1126, 1133–4, n. 11 (C.A.D.C.1969); *Local Union No. 12, United Rubber Workers*, 368 F.2d 12, 24 (5th Cir.1966).

 Since it is therefore clear that appellees were free to proceed under Title VII, the remaining question is whether remedies under the PHRA are preempted by Title VII. Title VII expressly negates this possibility. Under Section 706(b) of the statute, 42 U.S.C. § 2000e–5(c), a claimant who wishes to seek redress under Title VII for a discriminatory employment practice occurring in a state which has a law prohibiting such practices must first commence proceedings

under the state law.[6] Instant appellees, by alleging violations of the PHRA, have merely attempted to satisfy the prerequisite set forth in the federal statute. If the law allows them to proceed under either federal statute, rules of preemption cannot be used to prohibit them from exhausting state remedies as required by the federal statute they choose. The allegations of instant appellees, if established, would constitute conduct proscribed by the PHRA, 43 P.S. §§ 955(c) and (d).[7]

For the foregoing reasons we conclude that the trial court was in error in determining that appellees were precluded from proceeding under PHRA to seek redress for the asserted violations because of preemption by the NLRA. The parties were entitled to seek relief pursuant to the provisions of the PHRA, and the sustaining of preliminary objections on the grounds that the remedies under the state act were preempted by the federal act was error.[8]

6. § 2000e-5. Enforcement provisions

(c) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State of local authority.

7. See n. 2, *infra.*

8. It appears from the record that appellees may have filed their claims with the court rather than the Pennsylvania Human Relations Commission. Under our decision in *Clay v. Advanced Computer Application, Inc.,* 522 Pa. 86, 559 A.2d 917 (1989), application should have been made first to the Commission. However, since this issue is not

Accordingly, the order of the Superior Court reversing the trial court is affirmed, and the matter is remanded to the trial court for further proceedings consistent herewith.

presently before us and the record may not adequately reflect this circumstance, we express no opinion as to its resolution.