536 A.2d 412

**Cecelia DRISCOLL and William Dailey, Appellants,**

v.

**CARPENTERS DISTRICT COUNSEL OF WESTERN PENNSYLVANIA and United Brotherhood of Carpenters, Appellees.**

Superior Court of Pennsylvania.

Argued June 16, 1987.

Filed Jan. 11, 1988.

Daniel W. Ernsberger, Pittsburgh, for appellants.

Ronald L. Gilardi, Pittsburgh, for Carpenters Dist., appellees.

Before ROWLEY, JOHNSON and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This action was instituted by Plaintiff–Appellants Cecelia Driscoll and William Dailey, claiming that they were the subjects of discrimination in job referrals by the Defendant–Appellee labor organizations. Their Complaint asserted that they were denied job referrals through a "Hiring Haul (sic)" job referral system maintained by the Appellee, as a result of intentional sex discrimination against Ms. Driscoll, and retaliation against her father, Mr. Dailey, because he complained of the alleged sexually discriminatory treatment experienced by his daughter. They based their claims upon rights provided in the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, § 1, et seq., 43 P.S. § 951, et seq.[1] After discovery procedures, the Appellees filed a Motion for Summary Judgment, contending that the claims arising in this action were preempted by applicable federal labor law, and also contending that the action was untimely filed by virtue of the limitations period set forth in the Human Relations Act. The trial court found merit in the preemption argument, granted summary judgment in favor

---

1. The provisions of the Act prohibiting labor organizations from denying full membership opportunities or otherwise discriminating against individuals with respect to various aspects of employment, based upon sex, are set forth in 43 P.S. § 955(c). A prohibition against retaliation by a labor organization against an individual because he or she has opposed any practice forbidden by the Act is set forth in 43 P.S. § 955(d).

of the Appellees, and dismissed the Complaint. This appeal arises from that action by the lower court.[2]

In our review of an order granting summary judgment, our function is normally to determine whether any genuine issue of triable fact exists. *Bowman v. Sears, Roebuck & Co.*, 245 Pa.Super. 530, 369 A.2d 754 (1976). Pa.R.C.P. 1035 provides that summary judgment may be granted when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together, reveal that there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. *Bobb v. Kraybill*, 354 Pa.Super. 361, 364, 511 A.2d 1379, 1380 (1986).

At least with regard to the preemption issue, there does not appear to be any real question of the alleged factual basis for the Appellants' action. In their Complaint, the Appellants recited that they were both members of the Appellee labor organizations, and had completed necessary apprenticeship requirements and job training to qualify as journeymen carpenters. They alleged that by the terms of a "Labor Agreement"[3] and "Hiring Haul (sic) Practices", the Appellants and similarly situated members of the Appellee labor organizations are to be referred to employment opportunities as they are made known to the Appellees. The Appellants then declared that contrary to the "Labor Agreement" and permissible "Hiring Haul (sic) Practices", Ms. Driscoll had been discriminated against because of her

2. The genesis of this action was in a complaint filed with the Human Relations Commission on February 3, 1984. The Commission had jurisdiction of the matter for one year. Subsequent to that period, the Appellants exercised the right to file suit on their claims in the Court of Common Pleas. See *Lukus v. Westinghouse Electric Corp.*, 276 Pa.Super. 234, 419 A.2d 731 (1980). An appeal from a ruling by the Commission in a case such as this would have to be filed with the Commonwealth Court. See 42 Pa.C.S.A. § 762(a)(3). However, the instant appeal from the Court of Common Pleas is properly filed in our Court, inasmuch as it does not fall within the statutory appellate jurisdiction of the Commonwealth Court. See 42 Pa.C.S.A. § 762.

3. Presumably, this refers to a standard collective bargaining agreement between the Appellees and employers within the segment of the employing industry in which the Appellants would have customarily been employed, as a result of job referrals by the Appellees.

sex and had been assigned to little or no employment since she became a "Journeymen (sic) Carpenter" on June 1, 1983. In the Complaint, the Appellants further alleged that while Ms. Driscoll was qualified for available work, and had requested the Appellee to assign her to available work, it had refused to assign her to such work and instead assigned male members to such work. It was claimed that the Appellees had retaliated against her, on account of her demands for work, by refusing to assign her father to work. The Appellants also maintained that Mr. Dailey had been the subject of discrimination on account of sex, in retaliation for his daughter's request for work, and his own demands for work for her. Both of the Appellants contended that they had suffered substantial economic loss as a result of denial of employment opportunities, and had also suffered emotional harm and humiliation as a consequence of the Appellees' purported discrimination and retaliation.

The lower court determined that the issues presented by the Appellants' Complaint were subject to dismissal, as the resolution of them was a subject of federal law and the jurisdiction of the National Labor Relations Board (hereinafter often referred to as the "NLRB"). This appeal from that determination appears to present a question of first impression in the courts of our Commonwealth. That question is the narrow one of whether the doctrine of federal preemption precludes the courts of our Commonwealth from exercising jurisdiction over a dispute involving claims of individual plaintiffs, under Pennsylvania law, of sexual discrimination by a labor organization in the conduct of its operation of a hiring hall or job referral system, considering the applicability of the National Labor Relations Act, as amended (29 U.S.C. § 141, et seq.).[4]

4. The question of whether the Pennsylvania Human Relations Act prohibitions against sex discrimination were preempted by the National Labor Relations Act, with regard to the operation of an employer's employee health benefit plan, was examined by the United States District Court for the Western District of Pennsylvania in *United States Steel Corp. v. Commonwealth of Pennsylvania Human Relations Commission*, 34 FEP Cases 962 (1982). In *Lukus v. Westinghouse Electric Corporation*, 276 Pa.Super. 232, 419 A.2d 431 (1980), our

The doctrine of federal preemption rests upon the provisions of Article VI, Clause 2, of the United States Constitution, known as the Supremacy Clause, which states:

This Constitution and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The appropriate analytical approach to be taken by a court, when faced with a question of possible preemption, has been the subject of discussion in numerous cases. The process of review in such circumstances is frequently difficult and the task of analysis quite complex.

One oft-cited authority in this area is the Supreme Court's decision in *Jones v. Rath Packing Company*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), rehearing denied 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977). In its Opinion in that case, the Court explained the following concerning the path of deduction to be followed to determine whether federal laws or other guidance preclude the enforcement of a state statute as to the activities in issue [5]:

The first inquiry is whether Congress, pursuant to its power to regulate commerce, U.S.Const., Art. 1, § 8, has prohibited state regulation of the particular aspects of commerce involved in this case. Where, as here, the field which Congress is said to have pre-empted has been traditionally occupied by the States, see, e.g., U.S.Const., Art. I, § 10; *Patapsco Guano Co. v. North Carolina*, 171 U.S. 345, 358, 18 S.Ct. 862, 867, 43 L.Ed. 191 (1898), "we start with the assumption that the historic police

Court reviewed a case involving a similar claim, under the Pennsylvania Act. While a labor organization was also a defendant in that case, no issue of preemption as to the employee's claim against the union was presented or resolved.

5. In *Jones v. Rath Packing Co.*, the dispute under consideration was whether California's enforcement of its labeling laws was preempted by federal legislation governing the defendant's packing operations.

powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). This assumption provides assurance that "the federal-state balance," *United States v. Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971), will not be disturbed unintentionally by Congress or unnecessarily by the courts. But when Congress has "unmistakably . . . ordained," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall. This result is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. *City of Burbank v. Lockheed Air Terminal Inc.,* 411 U.S. 624, 633, 93 S.Ct. 1854, 1859, 36 L.Ed.2d 547 (1973); *Rice v. Santa Fe Elevator Corp., supra,* 331 U.S. at 230, 67 S.Ct. at 1152.

Congressional enactments that do not exclude all state legislation in the same field nevertheless override state laws with which they conflict. U.S.Const., Art. VI. The criterion for determining whether state and federal laws are so inconsistent that the state law must give way is firmly established in our decisions. Our task is "to determine whether under the circumstances of this particular case, [the State's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Accord, *De Canas v. Bica,* 424 U.S. 351, 363, 96 S.Ct. 933, 940, 47 L.Ed.2d 43 (1976); *Perez v. Campbell,* 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971); *Florida Lime & Avocado Growers, Inc. v. Paul, supra,* 373 U.S. at 141, 83 S.Ct. at 1217; *id.,* at 165, 83 S.Ct. at 1229; (White, J., dissenting). This inquiry requires us to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written.

See *De Canas v. Bica, supra,* 424 U.S. at 363–365, 96 S.Ct. at 940–941; *Swift & Co. v. Wickham,* 230 F.Supp. 398, 408 (S.D.N.Y.1964), appeal dismissed, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), aff'd on further consideration, 364 F.2d 241 (C.A.2 1966), cert. denied, 385 U.S. 1036, 87 S.Ct. 776, 17 L.Ed.2d 683 (1967).

430 U.S. at 525–526, 97 S.Ct. at 1309–1310.

Such general guiding principles have been followed and refined in a large number of cases which have addressed issues of arguable conflict or duplication between federal and state legislation and/or regulation in the field of labor relations. More specifically, and relevant in the instant context, numerous cases have examined questions of preemption as to the National Labor Relations Act.[6] They demonstrate that there is no general rule or guideline easily applied to all such situations.

Thus, in *Weber v. Anheuser–Busch, Inc.,* 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955), the Court explained:

By the Taft–Hartley Act, Congress did not exhaust the full sweep of legislative power over industrial relations given by the Commerce Clause. Congress formulated a code whereby it outlawed some aspects of labor activities and left others free for the operation of economic forces. As to both categories the areas that have been preempted by federal authority and thereby withdrawn from state power are not susceptible of delimitation by fixed metes and bounds.

348 U.S. at 480, 75 S.Ct. at 488. The Court went on to state that the penumbral area of exclusive federal jurisdiction could only be rendered clear by the course of continuing litigation. In *Weber,* the Supreme Court noted its prior pronouncement in *Garner v. Teamsters Union,* 346 U.S.

---

**6.** That legislation, also commonly known as the Wagner Act, was passed in 1935. The Taft–Hartley changes, in a statute named the Labor Management Relations Act of 1947, were the first significant amendments of the National Labor Relations Act. Significant subsequent amendments were made in the law, principally by the Landrum–Griffin legislation in 1959. The National Labor Relations Board is the federal agency charged with the administration of the Act, and its amendments.

485, 74 S.Ct. 161, 98 L.Ed. 228 (1953), and in prior cases cited in that opinion, that the National Labor Relations Act: "... leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible." 346 U.S. at 488, 74 S.Ct. at 164.

A most significant case in this area, and of particular importance in our review of the instant appeal, was the landmark decision of the Supreme Court in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), in which Justice Frankfurter authored the Opinion of the Court, and Justice Harlan filed 'a Concurring Opinion, which was joined by Justices Clark, Whittaker, and Stewart. In his majority Opinion, Justice Frankfurter devoted considerable attention to describing the difficulty of analysis in such cases. He did so by noting and comparing prior decisions of the Supreme Court, including the cases we have discussed above, which concerned federal preemption based upon the coverage of the National Labor Relations Act.

In his explanation of the analytical process to be applied, Justice Frankfurter highlighted two important considerations. Citing *International Association of Machinists v. Gonzales,* 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958), he explained that a court should not find a withdrawal of the power of states to act where the activity to be regulated was a merely peripheral concern of the federal labor legislation. Second, he relied upon several prior precedents in stating the rule that where the regulated conduct touched interests so deeply rooted in local feeling and responsibility, in the absence of compelling direction from Congress, there should be no inference that Congress had deprived the states of the power to act.

In *Garmon,* the Court then went on to declare that if it is not clear whether a particular activity is subject to resolution under the National Labor Relations Act, the determination should be left, in the first instance, to the NLRB. If

the NLRB decides that conduct is either protected or prohibited by that legislation, the states would be ousted of all jurisdiction in the area. Further, in the absence of a clear determination by the NLRB that a particular activity is protected or prohibited, a state's jurisdiction is precluded if the matter is arguably within the jurisdiction of the NLRB.

This rule would seem to be an easy one to follow. Our Pennsylvania Supreme Court has acknowledged the rule and applied it. See, for example, *Stryjewski v. Local Union No. 830*, 426 Pa. 512, 233 A.2d 264 (1967) and *Spica v. International Ladies Garment Workers' Union*, 420 Pa. 427, 218 A.2d 579 (1966).

Indeed, the *Garmon* rule was the lower court's basis for its decision in this case. It recognized that the National Labor Relations Board has assumed jurisdiction over cases involving allegations that a labor organization had operated its hiring hall or other employment referral system in a sexually discriminatory manner. The lower court cited cases such as *Pacific Maritime Association*, 209 NLRB 519 (1974). In the *Pacific Maritime* case, the NLRB specifically found that it was an appropriate forum for the resolution of claims of such types of discrimination on the part of a labor organization.

While the lower court's preemption inquiry stopped with its application of the *Garmon* holding, we believe that further evolutions of the preemption doctrine mandated additional analysis. In that regard, we recognize the Supreme Court's decision in *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) which involved claims of discrimination in the operation of a hiring hall by a labor organization. In *Farmer*, the California courts had rejected the plaintiff's state law tort claims, based upon *Garmon* preemption. While the Supreme Court in *Farmer* acknowledged the continued vitality of the *Garmon* holding,[7] it pointed out that it had recognized exceptions in

7. The general Garmon rule had been reaffirmed by the Court in *Lodge 76, International Association of Machinists and Aerospace Workers v.*

appropriate classes of cases. These included situations, previously noted in *Garmon,* in which the activity was determined to be merely a peripheral concern of the Labor Management Relations Act, or touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended that the states should not act. Further, the Court cited cases in which it had declined to apply the preemption doctrine, where the state law being invoked was so structured and administered that, in virtually all instances, it would be safe to assume that judicial supervision would assure no disservice to interests promoted by the federal labor statutes. In *Farmer,* the Court counseled against an inflexible application of preemption. After reviewing its holdings in many cases, the Court noted that the cases reflected a balanced inquiry into such factors as the nature of the federal and state interests in regulation and the potential for interference with federal regulation. See also *Vaca v. Sipes,* 386 U.S. 171, 180, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967), concerning suits involving duty of fair representation claims, on that point. The Supreme Court has restated the same approach to preemption cases since issuing its decision in *Farmer.* See, for example, *Belknap, Inc. v. Hale,* 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983) and *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978).

Turning finally to the instant case, and employing the analytical approach mandated by the aforementioned applicable decisions of the Supreme Court, we are convinced that the lower court's rigid application of the *Garmon* holding led it to an incorrect conclusion regarding the preemption

*Wisconsin Employment Relations Commission,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976) and *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). In the Lodge 76 case, the Court announced a second preemption doctrine, not applicable in this case. That doctrine proscribes state regulation and state-law causes of action concerning conduct which Congress intended to be unregulated (427 U.S. at 140, 96 S.Ct. at 2553), and concerning conduct intended to remain a part of the self-help remedies left to combatants in labor disputes (427 U.S. at 147–148, 96 S.Ct. at 2556–2557).

issue presented. We believe that the Appellants' claims of sex discrimination, based upon rights established under the Pennsylvania Human Relations Act, are not preempted merely because the National Labor Relations Board has assumed jurisdiction over similar claims.

In our analysis, we first recognize that the Appellants have alleged a denial of equal employment opportunities based upon purported discrimination on account of sex by the Appellees. In this area, the federal statutes have evinced a general intent to accord parallel or overlapping remedies against discrimination. See, for example, the Civil Rights Act of 1866 (42 U.S.C. § 1981) and the Civil Rights Act of 1871 (42 U.S.C. § 1983). Congress indicated in the Civil Rights Act of 1964 (42 U.S.C. § 2000a, et seq.) that it considered the policy against discrimination to be of the "highest priority". *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). As the Supreme Court noted in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974):

Title VII [of the Civil Rights Act of 1964] provides for consideration of employment-discrimination claims in several forums. See 42 U.S.C. § 2000e–5(b) (EEOC); 42 U.S.C. § 2000e–5(c) (State and local agencies); 42 U.S.C. § 2000e–5(f) (federal courts). And, in general, submission of a claim to one forum does not preclude a later submission to another. See 42 U.S.C. §§ 2000e–5(b) and (f); *McDonnell Douglas Corp. v. Green, supra* [411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ]. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination. (Footnotes omitted)

Thus, it is evident that the intent of Congress has been to allow an individual to pursue anti-discrimination rights un-

der state law, although there may be coincidental jurisdiction over such problems under the National Labor Relations Act or other federal legislation. Our Pennsylvania Supreme Court has recognized that the Human Relations Act is the analogue of Title VII of the Civil Rights Act of 1964. *General Electric Corporation v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission,* 469 Pa. 292, 365 A.2d 649 (1976). As the United States Supreme Court has recognized, state human rights laws obviously play a significant role in the enforcement of Title VII, and preemption of a state fair employment law impairs Title VII to the extent that the state law provides a means of enforcing the commands of Title VII. *Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Accordingly, we conclude that the intent of Congress would not be frustrated by a finding against preemption in the circumstances of this case.

We next examine the issue of whether the behavior to be regulated is conduct which touches interests deeply rooted in local feeling and responsibility or is only of peripheral concern to the federal law. *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 200, 98 S.Ct. 1745, 1758, 56 L.Ed.2d 209 (1978); *Farmer v. Carpenters, supra.* The Pennsylvania legislature guides us in this inquiry by its clear statement of purposes in the Human Relations Act:

> It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their ... sex ... and to safeguard their right to obtain and hold employment without such discrimination [and] to assure equal opportunities to all individuals....

43 P.S. § 952(b). From this legislative statement, it is clear that matters of sex discrimination in employment are of significant concern in our Commonwealth, and we share a "local" feeling of responsibility that such discrimination be prohibited and eliminated. With regard to the issue of "peripheral concern", we note that the National Labor Relations Act would prohibit sex discrimination of the type

alleged herein under §§ 8(b)(1)(A) and 8(b)(2), which define particular unfair labor practices by a labor organization. *Pacific Maritime Association, supra.* In such regards, the National Labor Relations Act prohibits labor organizations from taking actions against any employee which are based upon considerations or classifications which are irrelevant, invidious or unfair. See *Miranda Fuel Company, Inc.,* 140 NLRB 181 (1962), enforcement denied, 362 F.2d 172 (2nd Cir.1963). Discrimination by a labor organization because of sex considerations is only one of the rationales which the National Labor Relations Board has determined to be irrelevant, invidious, or unfair. See, for example, *Cargo Handlers, Inc.,* 159 NLRB 321 (1966), where unlawful discrimination in a union's hiring and referral system was based upon non-membership in the union and the race of the applicants. The particular matter of sex-based discrimination, as opposed to other irrelevant, invidious, or unfair considerations, appears to be only of peripheral concern under the National Labor Relations Act, while it is a subject of high priority under the Pennsylvania Human Relations Act. These conclusions mitigate strongly against a finding that preemption should be found to be applicable in the instant case.

Based upon all of the foregoing, we are convinced that the lower court erred in holding that the Appellees were entitled to summary judgment because the Appellants' claims were preempted, and subject to the exclusive jurisdiction of the National Labor Relations Board. As a result of its erroneous determination on that issue, the lower court did not attempt to resolve the Appellees' second contention, that the Appellants' suit was untimely filed. While that issue is argued by the parties to this appeal, it is not appropriate that we address it in the first instance, before it has been examined by the trial court. After the remand, the issue of timeliness shall be addressed and resolved by the lower court in the course of further proceedings in the case.

The Order of the lower court is hereby reversed, and the case remanded for further proceedings.   Jurisdiction is not retained.