**Ora E. JACKSON, Petitioner,**

v.

**PUBLIC SERVICE COMMISSION, Respondent.**

**Washington Gas Light Company, Intervenor.**

**No. 90–457.**

District of Columbia Court of Appeals.

Argued Feb. 19, 1991.
Decided May 8, 1991.

---

Lawrence D. Crocker, with whom Howard C. Davenport, Daryl L. Avery, and Brenda K. Pennington were on the brief, for respondent.

Excetral K. Caldwell, with whom John K. Keane, Jr., was on the brief, for intervenor.

Before ROGERS, Chief Judge, and SCHWELB and FARRELL, Associate Judges.

PER CURIAM:

This petition for review of a final order of the Public Service Commission of the District of Columbia (PSC), and of the denial of reconsideration of that order, follows a series of administrative adjudications of a consumer complaint in which petitioner contested the accuracy of her Washington Gas Light Company (WGL) bill. Petitioner challenges the PSC's order that she must pay $2,767.87—the amount the PSC determined to be still due on her WGL account—before her gas service will be reinstated. At oral argument petitioner professed to abandon all claims except her contention that the PSC erred in ruling that expiration of the statute of limitations for a contract suit did not bar WGL from refusing to reconnect her gas service until she paid her outstanding balance. Unpersuaded by this contention on the record before us, we affirm the PSC's order.

I.

In 1987, petitioner filed a residential consumer complaint with the Consumer Services Division of the PSC against WGL. Noting that she had tried a variety of informal approaches to resolve the matter, all without success, petitioner sought a hearing before the PSC, alleging that "errors of great magnitude have been made in reference to [WGL's] bills and service" beginning in November 1980, and continuing through June 1983 when WGL terminated her gas service. In response to her repeated requests in the spring and summer of 1987, the PSC held two days of hearings in October 1987 [1] and issued a decision on

Brian J.H. Lederer argued for petitioner. Ora E. Jackson, pro se, was on the brief.

---

1. At the hearing examiner's direction, WGL and petitioner, along with a representative of the PSC, also met on a separate occasion, without the hearing examiner, to go through petitioner's

November 9, 1987, in which the hearing examiner concluded that petitioner owed WGL $2,793.53 for gas service from January 23, 1981 through June 14, 1983. The hearing examiner found that the record did not sustain petitioner's assertions that some of her payments, as well as a grant from the DCEO, had not been properly applied to her WGL account. Similarly, the hearing examiner found that there was no evidence to support petitioner's claim that her WGL bills did not correctly reflect the amount of gas that she actually used, recognizing that WGL had met its "burden of establishing the accuracy of [petitioner's gas] meter." [2]

Disputing the hearing examiner's calculation of the late charges to be deducted, as well as the examiner's conclusions that a $400 DCEO grant had been applied to petitioner's account and that a sharp drop in temperature during the January 1981 billing period explained her increased gas usage, petitioner appealed the hearing examiner's decision to the full Commission. The PSC remanded the matter to a second hearing examiner, with the order that petitioner and WGL each brief the issue of "whether utilities may refuse to connect service until an applicant has paid bills outstanding for three years or more where the utility has failed to bring an action within the prescribed statutory period of time." [3] The

hearing examiner issued a written decision in July 1988 in which he held that despite the three-year statute of limitations on contracts, WGL could still require petitioner to pay her outstanding balance before it would restore her gas service. The PSC followed this decision with a March 6, 1989 proposed order, Order No. 9229, upholding the hearing examiner's decision on the statute of limitations issue along with his conclusions that the DCEO grant had been properly credited to petitioner's account and that much colder weather during the January 1981 billing period could account for the sharp rise in petitioner's gas bill at that time.[4] PSC ordered WGL to permit petitioner to pay her bill, without finance charges, over a period of at least twenty-four months.

Petitioner filed for reconsideration of the proposed order. As the PSC noted in Order No. 9284, dated May 22, 1989, it chose to treat Jackson's application as exceptions to the proposed order rather than a reconsideration, because a request for reconsideration by the PSC can be appropriate only after the PSC issues a final order. See D.C.Code § 43–904 (1990). A final order, Order No. 9334, affirming the conclusions of the PSC expressed in the March 6 proposed order, was entered on August 17, 1989,[5] and petitioner sought reconsidera-

WGL bills, her cancelled checks to WGL, and a record of the District of Columbia Energy Office (DCEO) grants she had received, in an attempt to settle the question of the amount petitioner actually owed WGL. The matter was not fully resolved at this conference.

2. At the same time, the examiner ruled that the late charges that WGL had added to petitioner's bill should be deducted from her total amount due, because at least some of those charges, if not all, probably would not have accrued if, when Jackson had first voiced her concerns regarding her bill to WGL, the company "had compared Ms. Jackson's payments and DCEO grants in a manner similar to the format used at the conference" ordered by the hearing examiner and attended by Jackson, WGL, and a representative of the PSC. Recognizing the inherent problem in attempting "to determine which of the late charges should be deducted as a result of the proper crediting of Ms. Jackson's account," the hearing examiner cancelled all of the late charges and subtracted $894.70 from the amount petitioner owed WGL.

3. The PSC invited, as amici curiae, the Office of People's Counsel (OPC), the Potomac Electric Power Company (PEPCO), and the Chesapeake and Potomac Telephone Company (C & P) to submit briefs. PEPCO and C & P filed amicus briefs with the PSC.

4. The PSC, however, amended the amount that the first hearing examiner had calculated that petitioner owes WGL. After reviewing petitioner's monthly WGL bills, the PSC found that late charges totalling $25.66 had not been deducted from petitioner's account balance when the first hearing examiner originally considered the issue. To remedy that omission, the PSC decreased petitioner's amount due by that figure to a total of $2,767.87.

5. The PSC originally issued its order on August 2, 1989, as Order No. 9229, but rescinded that order because it had been assigned a number that also designated an order previously entered in the case. The August 17th order replaces the August 2nd order.

tion of that order. The PSC reviewed the request and issued its last order on February 14, 1990, denying the application for reconsideration.

## II.

As indicated, the PSC initially remanded the matter to the hearing examiner to consider the relationship between the statute of limitations governing contract actions and WGL's tariff permitting it to condition restoration of service on payment of any prior indebtedness.[6] The PSC stated in particular:

> Ms. Jackson's gas service has been disconnected since June 1983. Jackson Ex. 1, at 5. WGL will not reconnect service until Ms. Jackson pays the amount owed because WGL's tariff provides that the customer "shall discharge, either by payment or agreement, any prior indebtedness...." Public Service Commission of the District of Columbia No. 2, 1st Revised Page No. 20. This tariff provision may conflict, however, with Section 12–301 of the District of Columbia Code. This section provides that actions cannot be brought after three years on a simple contract or for any other purpose for which a time limitation is not specifically prescribed. D.C.Code § 12–301(7), (8) (1981).

> Thus, Ms. Jackson and other customers may be barred from bringing stale claims against utilities. Conversely, the utilities also may be barred from collecting unpaid debts after the statutory period of time. The paramount concern, however, is whether D.C.Code § 12–301 preempts the tariff provision. Specifically, whether utilities may refuse to connect service until an applicant has paid bills outstanding for three years or more where the utility has failed to bring an action within the prescribed statutory period of time. [Footnote omitted.]

The PSC therefore remanded for briefing of this issue, see note 3, *supra.* In opposition to WGL's argument on remand that

expiration of the statute of limitations does not extinguish or impair petitioner's obligation nor bar the utility from seeking recovery by other means, but simply bars recovery through the use of the courts, *see* D.C.Code § 12–301(7) (1989), petitioner argued as follows:

> While the statute of limitations does not technically, in contract cases, extinguish the underlying obligation, it does so in practical terms.

> The statute of limitations is an equity principle applied to law. The principle is that a right to act in a dispute must be acted on in good faith, in a timely manner so that the dispute can be resolved timely and with fresh evidence. So, the statute of limitations is not mere procedure; it is a substantive obligation imposed on a party claiming right under a contract, which is an essential part of the enforcement of the contract. Contracts are private agreements, which if they meet requisites of the law, will be enforced by public authority (herein the courts).

> \* \* \* \* \* \*

> Equity, by placing a time limit on the right to seek enforcement of a right in contract, imposes a duty of clean hands into [sic] order to have the substantive contract right enforced. If the party loses its right to enforcement, for practical purposes it has lost its substantive right.

The PSC, however, rejected this argument and agreed with the hearing examiner that the statute of limitations did not conflict with WGL's authorization under the tariff. Relying on cases such as *Cafritz v. Koslow,* 83 App.D.C. 212, 167 F.2d 749 (1948), and *Talbott v. Hill,* 49 App.D.C. 96, 261 F. 244 (1919), the examiner—and the PSC—concluded that the statute of limitations affected only WGL's right to bring an action in court on its contract with petitioner.

The statute of limitations does not preempt the tariff of WGL. The Company is within its right to recover the outstanding debt provided it does not rely on

---

**6.** In the District of Columbia, the relationship between a utility and its customer is contractual. *See Jackson v. United States,* 385 A.2d 786,

789 (D.C.1978) ("[WGL's] Tariff filed with the [PSC] is a part of its contract with the customer and is binding on both").

the courts to enforce it. The substantive right or obligation remains. WGL's tariff is consistent with the Consumer Bill of Rights which permits a utility to condition new service upon payment of any outstanding balance. *See* 15 D.C.M.R. § 307.2(d) (Feb.1987). The tariff is an alternate means of the exercising of the Company's right to secure payment on the debt. Therefore, under the tariff, the Company need not reconnect Ms. Jackson until the outstanding obligation is resolved.

 This court's scope of review of public utility commission orders is extremely narrow. D.C.Code § 43–905(a) (1990); *see Potomac Electric Power Co. v. Public Service Commission*, 457 A.2d 776, 782 (D.C.1983). Applying that standard, we accept as reasonable the PSC's conclusion that expiration of the statute of limitations did not bar WGL from enforcing the terms of its tariff. *See Riggs National Bank v. District of Columbia*, 581 A.2d 1229, 1240–41 (D.C.1990). That holding would end our discussion, except for an argument alluded to by petitioner in her brief before us and developed at length in oral argument. Petitioner contends that the PSC gave short shrift to D.C.Code § 43–501 (1990), which sets forth a regulated utility's obligation "to furnish service and facilities reasonably safe and adequate and in all respects just and reasonable." Petitioner argues that because WGL in fact "collects the unpaid bills [of customers such as petitioner] through an allowance for uncollectibles," it in effect would achieve a double recovery if allowed to collect again from petitioner by threat of refusal to reconnect service, in violation of its duty to furnish "just and reasonable" service. We decline to consider this issue. Neither the hearing examiner nor the PSC considered whether WGL's reliance on its tariff while purportedly writing off "bad debts" in rate increase requests amounted to a double recovery and "reliev[ed] the company of any incentive

affirmatively to collect," because the point of how the utility handles delinquent debts was never made to the agency. Oral argument has persuaded us that the issue of a utility's allowance for collectible debts, and whether it harmonizes with the company's right under the tariff and regulation to condition service on payment of past arrearages, is a potentially complex one that the PSC was given no opportunity to examine. We conclude that its resolution must await a case in which it is properly preserved. *See Smith v. Police & Firemen's Retirement & Relief Bd.*, 460 A.2d 997, 999 (D.C.1983); *Arthur v. District of Columbia Nurses' Examining Bd.*, 459 A.2d 141, 145 n. 7 (D.C.1983). We are satisfied that the PSC considered fully and fairly all those issues which petitioner presented to it.[7]

Accordingly, the decision of the PSC is *Affirmed.*

---

7. In particular, the record is inadequate to permit us to reverse the PSC's determination that WGL did not violate provisions of the Consumer Bill of Rights by failing to "docket" petitioner's 1981 or 1982 complaint to the PSC, and so invoke a requirement that termination of gas service be stayed. *See* 14 DCRR §§ 6.4, 9.3 (1981) (now 15 DCMR §§ 311.2, 323.3 *et seq.* (1987)).