**Absalom I. JORDAN, Jr., Petitioner,**

*v.*

**PUBLIC SERVICE COMMISSION, Respondent,**

**Potomac Electric Power Company, Intervenor.**

**No. 91–AA–387.**

District of Columbia Court of Appeals.

Argued Sept. 1, 1992.

Decided March 16, 1993.

Anthony W. Robinson and John A. Turner, Minority Business Enterprise Legal Defense & Education Fund, Inc., for petitioner.

Josephine Scarlett–Simmons, Staff Counsel, Public Service Com'n, with whom Daryl L. Avery, Gen. Counsel, and Lisa C. Wilson, Staff Counsel, were on the brief, for respondent.

Brian J.H. Lederer, for intervenor.

Lloyd N. Moore, Jr., with whom Kirk J. Emge, Joy A. Johnson, and John J. Sullivan were on the brief, for intervenor.

Before SCHWELB, WAGNER and KING, Associate Judges.

SCHWELB, Associate Judge:

Petitioner Absalom I. Jordan, a customer and shareholder of Potomac Electric Power Co. (PEPCO), has asked this court to review two orders of the Public Service Commission (PSC or the Commission). In Order No. 9540, dated August 24, 1990, the Commission dismissed without a hearing Jordan's complaint that PEPCO had failed to comply with the federal Small Business Act, 15 U.S.C. §§ 631, 637(c) (1992 Supp.). The Act requires certain contractors who deal with federal agencies to negotiate and implement subcontracting plans which promote the participation of socially and economically disadvantaged individuals, including blacks, Hispanics, and members of other racial and ethnic minority groups. In Order No. 9646, dated February 4, 1991, the Commission denied requests for reconsideration by the Minority Business Enterprise Legal Defense and Education Fund (MBELDEF) and by Kingwood Mining Company, a minority enterprise which had been embroiled in a separate controversy with PEPCO. The Commission held in the first of these orders and reiterated in the

second that PEPCO was subject to the Small Business Act, but that no violation of the Act had occurred, that no remedial action was appropriate, and that the controversy was moot.

Before this court, Jordan contends that the complaint against PEPCO should not have been dismissed without a hearing and that the Commission applied incorrect legal standards. We vacate the Commission's order of dismissal and remand for further proceedings.

## I.

### THE PROCEEDINGS BEFORE THE COMMISSION

In 1978, Congress passed amendments to the Small Business Act which are now codified in 15 U.S.C. § 637(c).[1] These amendments were predicated on Congressional recognition that members of certain racial and ethnic minorities were socially and economically disadvantaged because they had been subjected to racial or ethnic prejudice or to cultural bias, without regard to their individual qualities. § 637(a)(5) and (6). The category of socially or economically disadvantaged individuals was presumed to include Black Americans and Hispanic Americans, as well as members of other minority groups. § 637(c)(3). Congress declared it to be the policy of the United States that

small business concerns, and small business concerns owned and controlled by socially and economically disadvantaged individuals, shall have the maximum practical opportunity to participate in the performance of contracts let by any Federal agency.

§ 637(c)(1).

To promote this policy, Congress required federal agencies to include in their contracts various provisions designed to improve the opportunities of members of racial and ethnic minorities and other disadvantaged persons to participate as subcontractors. *See, e.g.,* § 637(c)(2) and (3).

---

1. References in this opinion to § 637 are to 15 U.S.C. § 637 (1992 Supp.). At the time of the PSC decisions, what is now § 637(c) was

§ 637(d). Former § 637(c) ceased by its terms to be effective on September 30, 1991.

Much of the legislation was aimed at the conduct of federal agencies.

The Small Business Act also imposes direct obligations upon prospective prime contractors. Section 637(c)(4)(B) provides that, before a contract is awarded,

> the apparent successful offeror shall negotiate with the procurement authority a subcontracting plan which incorporates the information prescribed in paragraph (6). The subcontracting plan shall be included in and made a material part of the contract.

The subcontracting plan must include, among other things, percentage goals for use as subcontractors of small business concerns, including enterprises owned and controlled by socially and economically disadvantaged individuals. *See, e.g.,* § 637(c)(6)(A).

In his complaint to the PSC, filed on May 25, 1989, Jordan claimed that PEPCO, a federal contractor, had violated the Act because it had failed to negotiate and to institute the required subcontracting plan. In his submissions to the Commission, Jordan alleged that, beginning approximately in 1980, the General Services Administration (GSA) had sought compliance by PEPCO, but that PEPCO had contended that its activities were not covered by the Act and had refused to comply with its provisions. In 1985, according to Jordan, GSA requested an opinion from the Department of Justice (DOJ) regarding PEPCO's claims of lack of coverage. In March, 1987, DOJ issued an opinion in which it concluded that the Act applies to PEPCO. Jordan alleged that in spite of the DOJ ruling, it was not until August 29, 1989, three months after he had filed his complaint with the Commission, that PEPCO signed a subcontracting plan as required by the Act.[2]

The legal basis for Jordan's submission was D.C.Code § 43-503 (1990), which provides in pertinent part that

> [t]he Commission shall have power, after hearing and notice by order in writing, to require and compel every public utility to comply with the provisions of Chapters 1–10 of this title, and with all other laws of the United States applicable, and any municipal ordinance or regulation relating to said public utility....

Jordan contends that § 637(c) is a law of the United States applicable to PEPCO, and that the Commission therefore has the authority to compel PEPCO to comply with it.

In his initial complaint, Jordan alleged that PEPCO's violation of § 637(c) had subjected the utility to potential liabilities, and he asked the Commission to require PEPCO to disclose these liabilities and to "make appropriate changes to PEPCO's rate base." In subsequent submissions, Jordan and MBELDEF requested additional affirmative relief. Specifically, they asked that the Commission require PEPCO, among other things:

1. to comply with § 637(c) by "having an appropriate share of its business with minority contractors;"

2. to fund a study to determine the harm suffered by minority contractors as a result of PEPCO's noncompliance, and to determine the current availability of minority businesses capable of providing satisfactory services under a valid subcontracting plan;

3. to advertise in local media its intent to comply with the Small Business Act;

4. to hire a minority consulting firm to review PEPCO's management structure; and

5. to pay Jordan's counsel fees.[3]

---

**2.** Jordan also claimed that the plan to which PEPCO finally agreed was inadequate, in that only three percent of PEPCO's subcontracts were to go to minority or other disadvantaged enterprises.

**3.** Some of the requested relief was, to say the least, controversial. Jordan proposed that the study of harm suffered by minority contractors be conducted by MBELDEF at PEPCO's expense. He also urged the Commission to order

PEPCO to provide a five-year grant to MBELDEF for the purpose of monitoring PEPCO's compliance with the Small Business Act. Finally, he asked that PEPCO be penalized pursuant to D.C.Code § 43-544 (1990), which provides for fines or imprisonment for "[a]ny wilful or malicious" violations of "this sub-chapter." The subchapter in question deals with "master-metered apartment houses." *See* §§ 43-541 *et seq.*

PEPCO responded to Jordan's complaint by denying any violation of § 637(c). Initially, PEPCO contested Jordan's contention that it was covered by the Act.[4] PEPCO further represented that, despite the asserted lack of coverage, it had pursued an aggressive program of affirmative outreach to minority subcontractors. PEPCO told the Commission that it had recently presented a proposed subcontracting plan to GSA and was engaged in substantive discussions with that agency. PEPCO therefore requested the Commission to dismiss Jordan's complaint.

During the pendency of the proceedings before the Commission, PEPCO reached agreement with GSA as to a mutually acceptable areawide subcontracting plan. Based on its acceptance of this plan, GSA represented to the Commission that "no genuine issue exists as to whether PEPCO is currently in violation of [§ 637(c)]." GSA therefore requested the Commission to dismiss the proceeding against PEPCO.

## II.

### THE COMMISSION'S RULINGS

Although Jordan requested an evidentiary hearing on his complaint, the Commission did not hold one. Instead, on August 24, 1990, the Commission issued Order No. 9540, in which it held that PEPCO was covered by the Small Business Act, but that no violation of the Act had occurred and that no remedial action was appropriate. The determination that the Act had not been violated was based on the Commission's belief that

there was a good faith [5] legal dispute as to whether PEPCO was covered by the Act, although [the Commission] notes that from 1975 to the present is a long time to refuse to acknowledge coverage and take no action to resolve the issue.

The Commission also concluded that "the question [whether there had been a violation] is moot given the execution of an areawide contract with GSA."

In Order No. 9646, the Commission further elaborated on its rationale as follows:

The Commission's conclusion that no violation of the Act has occurred was based upon the uncontrovertible [sic] fact that the issue under consideration was compliance by PEPCO with a Federal Act. Despite the protestations of MBELDEF and Kingwood, GSA, the agency charged with enforcing the Act, is satisfied with PEPCO's compliance. Now it appears the MBELDEF and Kingwood seek an expansion of this Commission's review. The question of the adequacy of the compliance and the diligence of the agency charged with enforcing the Act are questions best directed elsewhere.[6]

---

4. According to PEPCO's submission to the PSC,

[t]he provisions of the Act are only applicable to negotiated or competitively bid contracts with Federal agencies. However, [PEPCO] provides electric service to Federal agencies pursuant to tariff provisions subject to the jurisdiction of this Commission, not under contracts awarded by those agencies. Because Federal agencies do not award contracts to [PEPCO], the Company is not required to negotiate a subcontracting plan.

The GSA rejected this contention, as did the DOJ and the PSC. PEPCO has not asserted lack of coverage before this court.

5. The PSC's perception of PEPCO's *bona fides* was significantly qualified by the following paragraph in its decision:

However, the Commission is distressed by the apparent lack of diligence shown by GSA in pursuing PEPCO's failure to submit an acceptable plan within a reasonable time period. This inaction served only to encourage recalcitrant behavior and fuel allegations of bad faith, however erroneous. This adds credence to the ongoing suggestions that GSA's approval of the plan has been almost perfunctory. Notwithstanding the result we reach today, the Commission notes its extreme dissatisfaction with the manner in which PEPCO has conducted itself, such conduct necessitating the commencement of this proceeding. It is obvious that if a complaint had not been filed, PEPCO would not have complied with the federal statute. Notwithstanding PEPCO's protestations, its failure to resolve its disagreement with GSA gives credence to allegations of bad faith. Moreover, it is interesting to note that no challenge to GSA's requirements was mounted by PEPCO in *any* forum despite its insistence that PEPCO was not covered by the Small Business Act requirements. (Emphasis in original).

6. In spite of its view on rehearing that the question of GSA's diligence was "best directed elsewhere," the Commission had discussed that

## III.

## LEGAL DISCUSSION

### A. The Scope of Review.

 The scope of this court's review of the Commission's orders is narrow. *Jackson v. Public Service Comm'n*, 590 A.2d 517, 521 (D.C.1991) (per curiam). "In the determination of any appeal from an order or decision of the Commission the review by the [c]ourt shall be limited to questions of law, including constitutional questions...." D.C.Code § 43–906 (1990). We must accept the Commission's findings of fact[7] unless they are "unreasonable, arbitrary or capricious." *Id.*

When reviewing the Commission's legal determinations with respect to matters within its specialized competence, we must be appropriately deferential. *Winchester Van Buren Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 550 A.2d 51, 55 (D.C.1988). The weight to be accorded to the Commission's legal views is at its zenith when the inquiry relates to arcane questions regarding proposed rate increases. *See, e.g., Office of People's Counsel v. Public Service Comm'n*, 399 A.2d 43 (D.C.1979). The Commission has no intrinsic expertise, on the other hand, in interpreting federal statutes such as § 637(c), which have no special application to public utilities, and which were obviously enacted without any participation by the Commission. *See Zuber v. Allen*, 396 U.S. 168, 192–93 (1969).

### B. The Commission's Enforcement Authority.

In the present case, the District of Columbia statute which the Commission was called upon to apply was § 43–503, which authorizes it to compel compliance by public utilities with, *inter alia,* applicable laws of the United States. This court has never construed this broadly phrased provision. The Commission, however, had occasion to

consider § 43–503[8] in *In re Potomac Electric Power Co.*, Formal Case No. 541, Order No. 5429 (April 15, 1970), (*PEPCO I*) a decision which was forcefully brought to the Commission's attention during the proceeding in the present case.

In *PEPCO I*, the Commission confronted the question whether it had the authority to consider allegations that PEPCO had engaged in racially discriminatory employment practices and, if so, whether it should exercise that authority. Citing § 43–503, the Commission stated:

> There can be no doubt that the provision of equal employment opportunity is required by the laws of the United States and the District of Columbia.... When it is brought to our attention that the requirements of the law are not being met by a utility subject to our jurisdiction, we are clearly expected to act.

*PEPCO I*, at 41. Rejecting an argument by PEPCO similar to the one the utility is making in the present case, the Commission continued:

> PEPCO suggests that we need take no action and that the matter should simply be referred to other organs of [g]overnment concerned with discrimination, *e.g.*, the Equal Employment Opportunity Commission [EEOC], the U.S. Department of Labor, or the D.C. Human Relations Commission. For the reasons already discussed, we do not agree. We have both the power and the responsibility to take action ourselves.

*Id.* at 43.

The Commission then turned its attention to the appropriate remedy. After describing the evidence of past noncompliance which it had uncovered, the Commission held that "[t]here must be a program for affirmative action to eliminate employment discrimination." *Id.* The Commission directed that PEPCO institute forthwith an affirmative action program which the Commission had "worked out" with the assis-

---

question in some detail in Order No. 9540, and had severely criticized GSA. See note 5, *supra.*

**7.** In the present case, of course, there was no evidentiary hearing, and the Commission had

no occasion for making findings as to any disputed facts. The standard of review of its factual findings is therefore essentially irrelevant.

**8.** § 43–503 was then codified as § 43–303.

tance of the EEOC. *PEPCO I* thus stands for the proposition that, at least with respect to discrimination in employment, the PSC has both the authority and the duty to require a utility to take affirmative steps to correct the effects of past discrimination. *See generally Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417–18, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975).

The Commission did not discuss Order No. 5429 in either of its written decisions in the present case. Rather, it based its ruling on its perception that PEPCO had not violated the Small Business Act, that the proceeding was moot, and that it lacked authority to act in light of GSA's role. We consider each of these issues in turn.

### C. The Commission's Findings of No Violation and Mootness.

■ The Commission concluded that PEPCO did not violate the Act because there was a "good faith" legal dispute as to coverage. We do not agree.

A good faith dispute as to coverage, assuming that there was one,[9] is irrelevant to the question whether PEPCO violated the Act. Section 637(c)(4)(B) directs contractors who are subject to its requirements to negotiate and to carry out a subcontracting plan which will promote the fair utilization of disadvantaged individuals and organizations, including prospective minority contractors. That requirement is applicable irrespective of PEPCO's state of mind. "It is of no consolation to an individual denied the equal protection of the laws that it was done in good faith." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961). Similarly, any minority entrepreneurs who may have been precluded or inhibited from learning of opportunities to subcontract because the required plan was not instituted can derive little comfort from the fact, if it

was a fact, that PEPCO believed in good faith that it was not covered by the Act.

Counsel have cited us to no authority, and we know of none,[10] holding that a statute designed to eliminate the effects of racial or ethnic discrimination does not apply to a defendant simply because that defendant believes, in good faith or otherwise, that he or she is not subject to its proscriptions. Congress did not intend to make the right to fair and equal treatment contingent upon the victim's ability to prove *mens rea* or a specific intent to transgress. *See Albemarle Paper Co., supra,* 422 U.S. at 422, 95 S.Ct. at 2374.

■ We are likewise unable to agree with the Commission's apparent view that the case is now moot and that the Commission therefore lacks authority to act. Assuming, without deciding, that the plan adopted by PEPCO after Jordan had filed his complaint was in compliance with the Act, there remains the question whether there were any consequences flowing to third parties due to PEPCO's past failure to comply. The authority to grant relief "survives discontinuance of the illegal conduct." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *see also United States v. Oregon State Medical Society,* 343 U.S. 326, 334, 72 S.Ct. 690, 696, 96 L.Ed. 978 (1952).

### D. Deferral to GSA.

■ In Order No. 9540, the Commission held that there was no need for it to take corrective action because it is GSA which "determines compliance in accordance with its statute, rules and regulations." The Commission viewed its own authority as extending only "to determining whether its statute, rules or regulations have been violated and enforcing certain remedies contained in the D.C.Code." The Commission

---

9. We note, as did the Commission, that "from 1975 [sic] to the present is a long time to refuse to acknowledge coverage and take no action to resolve the issue." The Commission also characterized PEPCO's behavior as "recalcitrant." Order No. 9540 at 10.

10. Section 637(c)(4)(F) provides for liquidated damages in the event of a prime contractor's failure to make a good faith effort to comply with the requirements of the Act. This provision, however, deals with the showing that must be made to obtain a particular remedy. It does not make or purport to make lack of good faith an element of a *violation.*

did not identify the remedies to which it was referring, and made no mention of *PEPCO I*, in which it had assumed independent responsibility for enforcing federal and local proscriptions against discrimination, irrespective of the action taken or not taken by the EEOC or other agencies with civil rights responsibilities.

We do not suggest that *PEPCO I* necessarily controls the present case. There are evident differences between the equal employment opportunity laws and the Small Business Act provisions here at issue. Significantly, the affirmative subcontracting requirements of § 637(c) do not apply to the generality of employers, but only to those who seek to do business with federal agencies and who are otherwise subject to the Act. Section 637(c) essentially governs the relationship between the federal government and its contractors. Many of the Act's provisions are directed to federal agencies and only indirectly to affected private entrepreneurs.

The primary role of the federal government in monitoring this relationship can hardly be denied. The request by the GSA that the Commission dismiss Jordan's complaint potentially raises an issue of comity which apparently did not arise in the employment discrimination context. Indeed, in *PEPCO I*, rather than seeking termination of the Commission's proceedings against PEPCO, the EEOC assisted the Commission in formulating the appropriate affirmative relief.

Whether, under these circumstances, the case may and should proceed is, in the first instance, a matter for the Commission. That agency should, however, at least consider its own twenty-two-year-old precedent in *PEPCO I*, and explain whether and to what extent its reasoning in that case applies here. *Cf. Potomac Electric Power Co. v. Public Service Comm'n*, 457 A.2d 776, 783–84 (D.C.1983). Whatever the limits of our scope of review in this unusual case may be, "our authority—and responsibility—to find out why an agency acts as it does is considerable." *Washington Public Interest Organization v. Public Service Comm'n*, 393 A.2d 71, 79 (D.C.1978), *cert.*

*denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). We are not persuaded that the Commission has adequately analyzed its own responsibilities under the applicable District of Columbia statute as construed in *PEPCO I.*

According to Jordan, the Commission's all but plenary power under § 43–503 to compel public utilities to comply with all applicable laws applies even in situations generated by PEPCO's status as a federal contractor. GSA's failure to require PEPCO to take affirmative steps to undo the consequences of past noncompliance, says Jordan, does not, under *PEPCO I,* affect the Commission's independent authority and obligation to enforce the law. PEPCO and the Commission argue, on the other hand, that it is not the Commission's function to review the rulings of a federal agency, and that GSA's finding that PEPCO is now in compliance is conclusive. The Commission must pass on these contentions in the light of *PEPCO I,* and consider any other relevant precedent of which it is aware.

We emphasize that this is not a case in which the Commission recognized that it had the authority to proceed with Jordan's complaint but elected not to do so as a matter of litigation priorities, or in order to avoid duplication of effort with a federal agency. If the dismissal had been based on the exercise of prosecutorial discretion or on the Commission's reasoned allocation of limited resources, the issue before us would be quite different. We recognize, for example, that if the Commission were to take the position that it should assume the primary obligation to enforce federal contracting policies, then the ratepayers of the District of Columbia, rather than the federal taxpayers (who fund the General Services Administration) would have to foot the bill. As we recently reiterated in *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 398 (D.C. 1991),

[c]ourts are understandably and rightly reluctant to tell an agency when it should institute enforcement proceedings and when it should not, for "[t]he agency is

far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Heckler v. Chaney*, 470 U.S. 821, 831–32, 105 S.Ct. 1649, 1656, 84 L.Ed.2d 714 (1985).

In the present case, however, the Commission did not purport to be exercising prosecutorial discretion. Rather, it believed that it had no *authority* to act. It is this dispositive holding that the Commission must reconsider in the light of its own precedents. If the Commission concludes on remand that it has the statutory authority to entertain Jordan's complaint, then it must determine whether it is obliged to do so, *cf. PEPCO I,*[11] or whether, as appears more plausible, the decision to proceed or not to proceed is discretionary. If the Commission concludes that this determina-

tion is a discretionary one, then the Commission must elect whether to defer to GSA or to act independently.

## IV.

## CONCLUSION

For the foregoing reasons, the decision of the Public Service Commission dismissing Jordan's complaint is hereby vacated, and the case is remanded for further proceedings consistent with this opinion.[12]

*So ordered.*

WAGNER, Associate Judge, dissenting:

A principal issue before this court is whether · the Public Service Commission (PSC or Commission) properly determined the scope of its authority under D.C.Code § 43–503 (1990).[1] Remand is not required

11. The Commission apparently believed, when it decided *PEPCO I,* that it had an independent duty to eliminate employment discrimination irrespective of any action or inaction on the part of other federal or local agencies. As we have noted, however, the provisions of the Small Business Act here at issue are narrowly addressed to the federal government's contracting policies, and it may be more difficult under those circumstances to infer an obligation on the part of the Commission to allocate its finite resources to the enforcement of a federal statute administered by a federal agency, especially when that agency is authorized by law not to do any business with an enterprise which does not comply.

12. In her dissenting opinion, Judge Wagner suggests that the federal Small Business Act preempts any action by a District of Columbia agency designed to remedy violations of that Act. This argument was not made by the Commission or by PEPCO, at least in recognizable preemption terms, either to this court or in the administrative proceeding. Accordingly, Jordan and his allies have had no opportunity to respond to it. *See Ford v. United States,* 533 A.2d 617, 624–25 (D.C.1987) (en banc) (appellate courts should not decide difficult issues not presented to them by counsel).

As Judge Wagner points out, "local involvement is deemed preempted when it *interferes with* the methods by which the federal enactment was designed to reach its goal." Dissenting opinion, at page 21 (emphasis added). Jordan could reasonably contend that a requirement by the District of Columbia that contractors take affirmative steps to correct the effects of their past noncompliance would enhance, and not impede, the goals of the federal legislation. In general, Congressional enactments de-

signed to vindicate equal opportunity are not viewed as precluding more comprehensive state or local legislation designed to achieve the same purposes; *see, e.g. Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974) ("legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination"); *Driscoll v. Carpenters Dist. Council of Western Pa.,* 525 Pa. 205, 213–14, 579 A.2d 863, 867–68 (1990). Arguably, on the other hand, there is more reason to discern a Congressional design to preempt local action where, as here, the federal enactment is aimed at those who do business with the federal government, rather than at the world at large.

To date, counsel have discussed neither the case law addressing the issue of federal preemption nor any language or legislative history of the Small Business Act which might shed light on the question whether or not Congress intended to preempt state or local action. Under these circumstances, we decline to decide the case on the basis of preemption authorities not cited to us or to the Commission or by adopting a legal theory which has not been developed or discussed by counsel at all. On remand, the Commission is free, notwithstanding counsel's failure to raise preemption issues in the initial proceeding, to entertain argument on the question whether the Small Business Act preempts the kind of local regulatory action by the Commission sought by Jordan and his allies.

1. Pursuant to D.C.Code § 43–503, the Public Service Commission has the power, after notice and hearing, to compel a public utility to comply, *inter alia,* with any "laws of the United States applicable." Section 43–503 reads in its entirety as follows:

to resolve the question. The Commission dismissed petitioner's complaint as moot, having decided that its authority under § 43–503 to compel a public utility to comply with the federal law involved was at an end once the federal agency responsible for enforcing that law, the General Services Administration (GSA), determined that Potomac Electric Power Company (PEPCO) was in compliance with it. In my view, the Commission's determination of the scope of its authority under § 43–503 is a reasonable construction of its regulatory statute, and we should give it considerable weight. *See Winchester Van Buren Tenants Ass'n v. District of Columbia Rental Hous. Comm'n,* 550 A.2d 51, 55 (D.C.1988) ("Courts should give great weight to any reasonable construction of a regulatory statute adopted by an agency charged with its enforcement.")

It was entirely reasonable for the Commission to conclude that any action under § 503 to compel PEPCO to negotiate and include in its contract with GSA provisions conforming to federal procurement requirements was moot once GSA executed a contract with PEPCO which, pursuant to its authority under law, GSA determined met the requirements of the Small Business Act, 15 U.S.C. § 637(d)(4) and (5) (the Act).[2] *See* 15 U.S.C. § 637(d)(4)(C) and (D).[3] As the Commission points out on appeal, if it had not dismissed the complaint, it would have been obliged to accept GSA's conclusion that the contract conformed to federal requirements, making further action on that issue a useless pursuit. Alternatively, the Commission would have had to resolve the issue anew, perhaps reaching a decision inconsistent with that of the responsible federal agency, a potential fraught with mischievous consequences. Under the circumstances, the Commission properly declined to proceed where the overriding federal interest in overseeing the manner in which it achieves the goals for which the Small Business Act was designed is not the proper subject of local control.[4] Nothing in

**Commission to compel compliance with laws and ordinances.**

The Commission shall have power, after hearing and notice by order in writing, to require and compel every public utility to comply with the provisions of Chapters 1–10 of this title, and with all other laws of the United States applicable, and any municipal ordinance or regulation relating to said public utility, and to conform to the duties upon it thereby imposed or by the provisions of its own charter, if any charter has or shall be granted it: Provided, that nothing herein contained shall be held to relieve any public utility, its officers, agents, or servants, from any punishment, fine, forfeiture, or penalty for violation of any such law, ordinance, regulation, or duty imposed by its charter, nor to limit, take away, or restrict the jurisdiction of any court or other authority which on March 4, 1913, had or which may thereafter have power to impose any such punishment, fine, forfeiture, or penalty.

2. The Act requires GSA and the Small Business Administration to develop a subcontracting program designed to assure that small businesses owned and controlled by socially and economically disadvantaged individuals have "the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency." *See* 15 U.S.C. § 637(d)(1).

3. The federal procurement authority (here GSA) is responsible for determining whether the plan of the offeror (here PEPCO) meets the requirements of law and to withhold the award of a contract if it does not. Pertinent statutory provisions read as follows:

(C) If, within the time limit prescribed in regulations of the Federal agency concerned, the apparent successful offeror fails to negotiate the subcontracting plan required by this paragraph, such offeror shall become ineligible to be awarded the contract. Prior compliance of the offeror with other such subcontracting plans shall be considered by the Federal agency in determining the responsibility of that offeror for the award of the contract. (D) No contract shall be awarded to any offeror unless the procurement authority determines that the plan to be negotiated by the offeror pursuant to this paragraph provides the maximum practicable opportunity for small business concerns owned and controlled by socially and economically disadvantaged individuals to participate in the performance of the contract.

15 U.S.C. § 637(d)(4)(C) and (D).

4. In dismissing the complaint, the Commission determined, *inter alia,* that the federal statute and regulations implementing it "do[ ] not contemplate state Commission action." *See* 15 U.S.C. § 637(d)(8); Federal Actions Acquisitions Regulations, 48 C.F.R. § 19.702(c) (1992). The Commission also stated that "[t]he Commission's statutory power only extends to determining whether its statute, rules or regulations have been violated and enforcing certain remedies contained in the D.C.Code."

the Commission's charter authorizes it to intrude into these aspects of the federal procurement process after that process has been completed by execution of a contract by the federal government with its supplier (PEPCO).

In its ruling, the Commission recognized not only the limits of its own power under § 503, but also the principles of federal preemption, although the Commission did not so label its restraint.[5] Preemption invalidates or precludes state action which interferes with or is contrary to federal law. *Hillsborough County v. Automated Medical Labs, Inc.*, 471 U.S. 707, 712, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.)). Federal preemption can be express or implied. *Id.*; *Norfolk & W. Ry. v. Public Utils. Comm'n*, 926 F.2d 567, 569 (6th Cir.1991). Preemption may be presumed where the statutory and regulatory scheme in the area is so comprehensive that it is reasonable to infer that there is no room for supplementary state regulation. *International Paper Co. v. Ouellette*, 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987); *Hillsborough*, 471 U.S. at 713, 105 S.Ct. at 2375; *Ray v. Atlantic Richfield*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). Local involvement is deemed preempted when it interferes with the methods by which the federal enactment was designed to reach its goal. *International Paper*, 479 U.S. at 494, 107 S.Ct. at 813.

We deal here with such an area of federal interest where intrusions of local authority over the terms of federal contracts specified by statute cannot be countenanced and where the involvement by the individual states or other local governments would be disruptive to the federal scheme. The very nature of the interest involved here raises an inference of local exclusion. That interest is participation of small business concerns and the socially disadvantaged in the federal procurement system through federally mandated and enforced contract provisions. Thus, I cannot agree with the majority that the Commission erred in dismissing that aspect of the petitioner's complaint which sought to compel PEPCO to negotiate a contracting plan with GSA after GSA had already approved PEPCO's plan and executed a contract.

Similar considerations lead me to conclude that the Commission properly dismissed petitioner's related requests for certain remedial relief for claimed past transgressions by PEPCO. As the Commission concluded, the remedies sought by petitioner are not within its statutory powers. *See* D.C.Code §§ 43–102, –503;[6] *see also Ches-*

---

**5.** I cannot agree with the majority that the Commission's failure to characterize one of its legal positions in "recognizable preemption terms" either precluded the parties from addressing the point or forecloses this court from considering the legal correctness of its ruling. *See Common Cause v. Federal Election Comm'n,* 285 U.S.App. D.C. 11, 12, 906 F.2d 705, 706 (1990) (agency decision of less than ideal clarity will be upheld if its path can be reasonably discerned) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys. Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)). Here, it is clear from PSC's two orders that it relied, in part, on preemption principles in dismissing petitioner's complaint. *See supra* note 4. The PSC's position that its action is precluded by the governing federal statute and regulations and that the appropriate forum "as Congress intended [is] GSA, SBA or the federal courts" also permeates its brief in this court. In summarizing its arguments on review, the Commission stated the following which exemplifies its legal position: The Commission's decision to dismiss the action must be upheld because: 1) only GSA, not the Commission, has statutory authority to determine whether the Small Business Act has been violated and no such determination was ever made, 2) GSA, not the Commission, has the authority over the federal procurement process, and 3) a remand of this matter would lead us to the same result because the Commission lacks authority in this area.

Such reasons for sustaining the validity of the PSC's order fall within the preemption principles discussed in this dissenting opinion. Therefore, in my view, the PSC's preemption determination is sufficiently articulated in such language in its orders and brief to allow this court to review whether the PSC erred in concluding as a matter of law that federal law precludes it from intruding into an area which by statute is vested in certain federal agencies or in the federal courts.

**6.** D.C.Code § 43–102 outlines generally the Commission's authority to enforce certain laws affecting public utilities. *See also* D.C.Code § 43–503, *supra* note 1.

**1116**

apeake & Potomac Tel. Co. v. Public Serv. Comm'n, 378 A.2d 1085, 1089 (D.C.1977) (a creature of statute, the Commission may exercise only those powers granted by it). Moreover, as the Commission recognized, issues related to the adequacy of PEPCO's compliance and the diligence with which PEPCO complied with the federal statute "are questions best directed elsewhere." Remedies available to parties actually ag-. grieved [7] by any past noncompliance of the utility with federal law must derive from the federal laws allegedly violated.

The statute provides for inclusion of a liquidated damages provision in federal contracts payable, "upon a finding that a prime contractor has failed to make a good faith effort to comply with the requirements imposed [by § 637(d)]." 15 U.S.C. § 637(d)(4)(F)(i). The Act further provides:

> The contractor shall be afforded an opportunity to demonstrate a good faith effort regarding compliance prior to the contracting officer's final decision regarding the imposition of damages and the amount thereof. The final decision of a contracting officer regarding the contractor's obligation to pay such damages, or the amounts thereof, shall be subject to the Contract Disputes Act of 1978 (41 U.S.C. 601–603).

15 U.S.C. § 637(d)(4)(F)(ii). The statute makes clear that only GSA, the procuring agency, can pursue the remedy in the manner specified. Individuals cannot circumvent the procedural provisions of the statute and regulations upon which they rely in seeking redress. Although a private right of action in favor of a protected class has been implied in some circumstances from a statute, see *Organization of Minority Vendors v. Illinois Cent. Gulf R.R.*, 579 F.Supp. 574, 592 (N.D.Ill.1983), we need not decide whether the Act involved here does so. Whatever private rights of action may be implicit in the Act for any person or class of persons actually aggrieved, as the Commission determined, it is not the appropriate forum for redress for alleged federal rights derived by implication from the fed-

eral statute under which petitioner filed his complaint. Therefore, in my opinion, the Commission appropriately determined that its authority under the charter creating it does not allow it to adjudicate such federal rights, if any, and properly deferred to other forums. Accordingly, I respectfully dissent from the opinion of the court.

---

7. Appellant is a shareholder and ratepayer as opposed to a potential subcontractor of PEPCO who might be in a position to claim adverse consequences as a result of PEPCO's prior noncompliance.