**OFFICE OF the PEOPLE'S COUNSEL, Petitioner,**

v.

**PUBLIC SERVICE COMMISSION OF the DISTRICT OF COLUMBIA, Respondent.**

**Potomac Electric Power Company, Intervenor.**

**Washington Gas Light Company, Intervenor.**

**Nos. 00–AA–1581, 00–AA–1582.**

District of Columbia Court of Appeals.

Argued Oct. 25, 2001.

Decided May 30, 2002.

Brenda K. Pennington, Washington, DC, for petitioner. Elizabeth A. Noel, Sandra Mattavous–Frye, Scott H. Strauss and Andrea G. Lonian, Washington, DC, were on the brief for petitioner.

Timothy R. Robinson, Washington, DC, for respondent.

Paul S. Buckley, with whom Beverly J. Burke, Washington, DC, was on the brief, for intervenor Washington Gas Light Company.

Nicholas S. Penn, Kirk J. Emge and Paul H. Harrington, Washington, DC,

were on the brief for intervenor Potomac Electric Power Company.

Before STEADMAN and WASHINGTON, Associate Judges, and NEBEKER, Senior Judge.

STEADMAN, Associate Judge:

Beginning in the spring of the year 2000, public utilities have been required to pay the District of Columbia for their use of District-owned streets and other property. However, the law that established such a requirement also authorized the utilities to recover from their customers the full amount of such payments on a "pass-through" surcharge basis. Prior to imposition of the surcharge, Intervenors Potomac Electric Power Company ("PEPCO") and Washington Gas Light Company ("WGL") filed with the Public Service Commission ("PSC") a "public space occupancy rider" setting forth the manner in which they would implement the surcharge. In this petition for review by the Office of the People's Counsel ("OPC"), the principal issue before us is whether PSC engaged in a legally proper and sufficient review at that point of the utilities' surcharge proposals before approving them. We affirm.

**I. Facts and Scope of Review**

Under Title II of the *Fiscal Year 1997 Budget Support Act of 1996,*[1] the Mayor may issue permits for the use of public space. *See* D.C.Code §§ 7–1071 *et seq.* (2000 Supp.)[2] The Mayor is charged with establishing a "nondiscriminatory, fair, and equitable charge" for public space permits, *see* D.C.Code § 7–1074(2), and pursuant to the Mayor's delegation of that authority, the Department of Public Works ("DPW")

1. D.C. Law 11–198, 43 D.C.Reg. 4569 (1997).

2. The new 2001 codification is §§ 10–1141.01 *et seq.* Because throughout these proceed-

ings, the parties have referred to the old codification in all statutory citations, we do so as well in this opinion.

has issued regulations establishing charges per linear foot of public space use covered by each permit. 24 DCMR §§ 3302.8 & 3302.9.[3] However, the statute expressly provides that "[e]ach public utility company regulated by [PSC] shall recover from its utility customers all lease payments which it pays to the District of Columbia pursuant to this title through a surcharge mechanism applied to each unit of sale and the surcharge amount shall be separately stated on each customer's monthly billing statement." D.C.Code § 7–1076.

In the spring of 2000, PEPCO and WGL both filed Public Space Occupancy Surcharge ("PSOS") Riders with PSC that sought to recover from their customers the payments to be made under §§ 7–1071 et seq. PSC published Notices of Proposed Rulemaking that stated that the utilities had filed the PSOS Riders in compliance with § 7–1076. 47 D.C.Reg. 4421 (2000) (WGL); 47 D.C.Reg. 3537 (2000) (PEPCO). OPC filed motions opposing both utilities' PSOS Riders. For purposes of this appeal, OPC's principal objection addressed the failure to specify a specific surcharge amount or supply any cost data supporting the PSOS amount. Without such information, OPC claimed that PSC would be unable to fulfill its duty under D.C.Code § 43–402[4] to ensure that the

PSOS was "reasonable, just and nondiscriminatory."

In Order No. 11737 (PEPCO) and Order No. 11742(WGL), the PSC approved both utilities' PSOS over OPC's objections. PSC rejected the notion that it was able to review whether either PSOS was reasonable, just or nondiscriminatory because, according to PSC, the D.C. Council had already determined that the utilities could impose such a surcharge. PSC's review was limited to determining whether the utilities' filings complied with § 7–1076, and PSC concluded that they had done so. OPC filed applications for reconsideration of both orders.[5] Its primary argument was that PSC had failed to fulfill its statutory obligations in reviewing both utilities' filings.[6] In Order No. 11814(WGL) and Order No. 11815 (PEPCO), PSC reiterated what it considered to be its scope of review: ensuring compliance with § 7–1076. PSC again held that both utilities had complied with the statute and also noted that OPC had failed to offer any evidence to the contrary. Consequently, PSC denied the applications for reconsideration.

■■■ OPC filed a timely petition for review in this court pursuant to D.C.Code § 43–905. By statute, this court's review of a PSC order "shall be limited to questions of law, including constitutional questions; and the findings of fact by [PSC]

---

**3.** These charges have been amended by the *Fiscal Year 2001 Budget Support Act of 2000*, § 502, D.C. Law 13–172, 47 D.C.Reg. 6308 (2000).

**4.** "There shall be a Public Service Commission whose function shall be to insure that every public utility doing business within the District of Columbia is required to furnish service and facilities reasonably safe and adequate and in all respects just and reasonable. The charge made by any such public utility for any facility or services furnished, or rendered, or to be furnished or rendered, shall be reasonable, just, and nondiscriminatory. Every unjust or unreasonable or discriminating

charge for such facility or service is prohibited and is hereby declared unlawful." D.C.Code § 43–402.

**5.** "No appeal shall lie from any [PSC] order ... unless an application for reconsideration shall have been first made and determined." D.C.Code § 43–904(b). Furthermore, only issues set forth in the application may subsequently be argued before this court. *Id.*

**6.** OPC also challenged the timing of PEPCO's imposition of the surcharge prior to PSC approval. See note 7, *infra*.

shall be conclusive unless it shall appear that such findings ... are unreasonable, arbitrary, or capricious." D.C.Code § 43–906. While "we ... do not give the [PSC's legal] conclusion the same deference owed factual determinations, we nonetheless will sustain it if it is 'reasonable [and] based upon factors within the Commission's expertise.'" *Watergate East, Inc. v. Pub. Serv. Comm'n,* 662 A.2d 881, 886–87 (D.C. 1995) (citation omitted). "[T]o ensure that judicial review can be meaningful," this court requires that the PSC "explain its actions fully and clearly." *Potomac Elec. Power Co. v. Pub. Serv. Comm'n,* 661 A.2d 131, 135 (D.C.1995). If it has done so, "the petitioner challenging [a PSC] order assumes 'the heavy burden of demonstrating clearly and convincingly a fatal flaw in the action taken.'" *Watergate East, supra,* 662 A.2d at 886 (citation omitted). Indeed, we have characterized our review of PSC orders as "the narrowest judicial review in the field of administrative law." *Potomac Elec. Power Co. v. Pub. Serv. Comm'n,* 402 A.2d 14, 17 (D.C.) (en banc), *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979).

## II. Approval of PSOS Riders

We address in this appeal the issue whether PSC's review of the PSOS Riders

was proper and sufficient under the law.[7] The parties have, in a sense, taken what may appear at first blush to be extreme opposite positions. On the one side, OPC appears to charge the PSC with refusing to take any role in the application of the surcharge. On the other, PSC suggests that OPC wants it to execute "unfettered authority" in reviewing the utilities' filings. In our view, neither of these positions would be justified and in fact neither appears to accurately describe what happened in these proceedings.

 From the outset, PSC announced that its role would be to ensure the utilities' compliance with § 7–1076. *See* 47 D.C.Reg. 4421 (2000); 47 D.C.Reg. 3537 (2000). PSC did not exercise its otherwise plenary authority to insure that public utility charges are "reasonable, just and nondiscriminatory" because of its view that the Council had already done so with respect to the PSOS. "In general, this court defers to [PSC's] construction of a statute it is charged with administering, so long as that construction enhances the general purposes and policies underlying the statute." *Office of the People's Counsel v. Pub. Serv. Comm'n,* 610 A.2d 240, 244 (D.C.1992).[8] Similarly, "[w]hen reviewing

---

7. OPC also argues that PEPCO's implementation of the surcharge prior to PSC approval violated the provisions of D.C.Code § 43–609(a) requiring that rate payers be given notice "of every rate application or change in condition of service proposed and filed with" PSC and that "no filing ... be approved by [PSC] without adequate time for rate payer response." PSC first determined that the issue was moot in light of its subsequent approval and, upon the application for reconsideration, ruled as we read the order that at least the latter requirement (notice was in fact given to rate payers) did not apply to this proceeding involving the statutorily permitted surcharges. These rulings do not appear to us as unreasonable in the circumstances here.

8. OPC challenges the notion that PSC is charged with administering § 7–1076 and therefore urges this court to adopt a less deferential posture in reviewing PSC's construction of that statute. We disagree. PSC "shall inquire into any neglect or violation of the laws or regulations in force in the District of Columbia by any public utility doing business therein ... and shall have the power, and it shall be its duty, to enforce the provisions of Chapters 1–10 of this title as well as all other laws relating to public utilities." D.C.Code § 43–102. Certainly § 7–1076 falls within the "other laws relating to public utilities," and PSC's effort to ensure compliance with the statute was authorized by its general enforcement duties under § 43–102.

[PSC's] legal determinations with respect to matters within its specialized competence, we must be appropriately deferential." *Jordan v. Pub. Serv. Comm'n,* 622 A.2d 1106, 1110 (D.C.1993). In this instance, PSC permissibly focused on the plain language of § 7–1074(2) instructing the Mayor to establish a "nondiscriminatory, fair, and equitable charge" for public space permits as well as the regulations that have actually set forth these charges. We can find no fault with PSC's judgment that it had no role to play in determining the charges per linear foot that the utilities must pay to the District nor the overall general structure of their recovery by the utilities from their customers through "a surcharge mechanism applied to each unit of sale."

To be sure, PSC did have responsibility, at the point of initiation of the surcharge, to ensure that the utilities proposed to recover their fees through an appropriate mechanism. In our view, PSC did precisely this when it determined that the PSOS Riders complied with § 7–1076, a determination that was adequately supported by the record. After both utilities had submitted their proposals to PSC, OPC filed objections to both Riders while another party, the Apartment and Office Building Association of Metropolitan Washington, submitted comments on PEPCO's PSOS. PSC explicitly discussed these parties' concerns in its orders before it rejected their arguments. PSC also concluded that the data supplied by WGL showed that WGL's PSOS Rider complied with § 7–1076, and that PEPCO's calculation of its fees to be recovered was correct. As PSC noted, all

that was required from the utilities was verification of a simple calculation. "Inasmuch as DPW has established the charges upon which [the utilities'] lease costs are based, there is nothing left for [the utilities] to do but calculate [their] total lease costs and then pass that cost on to customers in proportion to the amount of kilowatt-hours [or therms] used by each customer." [9]

In a meaningful sense, this dispute seems to us to involve a question of timing. PSC was reviewing a proposed mechanism for implementing the utilities' statutory right to recover the lease payments that they were required to pay to the District. PSC determined that the proposal complied with the statutory right given the utilities. Whether in fact the surcharges as imposed turned out to be entirely consistent with the statute was a matter for later determination. We do not understand PSC to have disavowed any responsibility for oversight of the operation of the surcharge as actually implemented.

Indeed, PSC took particular note of PEPCO's "true-up" mechanism that would correct any differences in the amount of revenue collected from utility customers and the amount that PEPCO paid in right-of-way fees. (We note that WGL has a similar provision in its PSOS Rider.) The true-up provisions require that each utility annually compare its lease payments to the District with the amount of revenue collected through the PSOS and adjust the following year's surcharge accordingly if any under- or over-recovery is discovered. The true-up mechanisms demonstrate that,

---

**9.** While the calculations in this matter were simple to perform and easy to verify, the same may not necessarily be true for the variables within the formula in its implementation. Hence the provisions for continuing oversight, including true-up and audit as described *infra.* OPC did not present to PSC

any evidence that the utilities' calculations in their PSOS Riders were incorrect. Similarly, any fears by OPC that the utilities might try to recover late fee payments or audit/inspection costs from their customers may be addressed if and when such fees and costs are imposed.

contrary to OPC's contention, PSC presumably did not and will not wash its hands of the matter. Through the true-up process and any challenges thereto, PSC can ensure that the utilities are not overcharging their customers and that the PSOS is being properly implemented. If any errors are uncovered, then PSC would have the power and the duty to ensure correction.[10]

OPC questions whether PSC will have such power in the future, because, according to OPC, such power can only rest on PSC's authority under § 43–402, and PSC explicitly refused to use its § 43–402 powers in reviewing the PSOS Riders. We are constrained to disagree with OPC's contention that only § 43–402 would give PSC the needed authority to review the surcharges, either at this initial stage or in the future. PSC's authority is not grounded solely in this single statute. Other laws also granting PSC authority to regulate utilities, including § 43–102 (see note 8, *supra*) and § 43–608 (PSC has power to investigate unjust discriminatory rates, tolls, etc.), would empower PSC to review the utilities' PSOS in its implementation. We also think it reasonable that, for this initial stage in the imposition of the surcharge, PSC should have concluded that fulfillment of any § 43–402 duties was completed in its determination of the overall mechanism's compliance with § 7–1076, without (in our view) necessarily precluding exercise of those powers (or others bestowed upon the PSC) in the course of challenges to the actual implementation and administration of the surcharges.

In short, we see no basis to disturb the appealed PSC rulings made at the initiation of this statutorily authorized surcharge.

*Affirmed.*

---

10. In addition to the true-up process, the utilities must submit to DPW each quarter an inventory detailing the utility's occupancy of public space, *see* 24 DCMR § 3302.14, and DPW has the power to audit this report to ensure that the utilities have not "undercounted the number of linear or square feet of public rights-of-way occupied ... or ... un-

derpaid the rental fees due ...." 24 DCMR § 3302.15. These and other procedures within DPW, such as the requirement for public notice and comment before the lease charges are determined or modified, *see* D.C.Code 1–1506(a), provide an additional avenue for oversight of the utilities' PSOS.